THE FIFTH WARD SAVINGS BANK, OF JERSEY CITY, v.
THE FIRST NATIONAL BANK OF JERSEY CITY.

47 357
64e 492

1.  The president of a savings bank, having authority to carry on its general business, is not, *virtute officii*, invested with the power of borrowing money in behalf of the institution.
2.  Whether such officer was held out in this case as being possessed of such a competency was properly left to the jury as a matter of fact.

On motion for new trial.

Argued at June Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff, *H. M. T. Beekman* and *T. N. McCarter*.

For the defendant, *Wm. Brinkerhoff* and *Joseph D. Bedle*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an action of trover for the alleged conversion of certain bonds. The essential features of the case are these: One Boice was the treasurer and secretary of the plaintiff, the savings bank, and in these capacities transacted its usual business, and assuming an authority he did not possess, he fraudulently obtained a loan of the defendant in the name of the plaintiff and ostensibly for its use ; to secure the repayment of the moneys thus borrowed he pledged to the defendant the bonds in dispute. The funds thus realized were appropriated by Boice to his own use, that being his design when he obtained them. The fact of the fraud of Boice was not in dispute, the only point now in question being, whether he had either apparently or actually been clothed with authority to borrow moneys for the plaintiff and to place its securities as collateral.

At the trial the judge presiding held that such authority was not incident to the offices held by this man. It is clear

that such view was correct, for it would be a wide divergence from fundamental law to declare that the power claimed existed, *virtute officii*. It would be truly disastrous to these valuable institutions if they cannot appoint a treasurer and deposit in his custody their moneys and securities, without such situation giving rise to an inevitable inference that such official has been clothed with an unlimited capacity to contract loans and sell and pledge such securities; the action of the judge in this matter was plainly right.

As it was clearly shown that Boice acted knavishly in this affair, and had not been clothed with any express power to obtain the loan in question, or to pledge these bonds, the only open point of inquiry on this subject was, whether or not the plaintiff had put its treasurer in such an attitude before the public or before this defendant, as to have warranted a reasonable inference that he was its general agent and had the right to execute the transaction in question. This part of the case was left to the jury as a matter of fact, and the verdict was in favor of the plaintiff.

After a careful study of the testimony, no ground has been found that will justify this court in disturbing this finding of the jury. It is true that a large control over the business of the plaintiff had been confided to Boice. He had been paid a salary and had been allowed to select his subordinate. One of the witnesses said he had been employed for "so much money to run the bank," but this merely meant that he carried on for the institution its every-day affairs, such as receiving deposits, investing its moneys, receiving interest money and paying depositors. For such purposes he was undoubtedly the general agent of the plaintiff with regard to the ordinary transactions incident to its business; but such authority, standing by itself, would not have warranted even an inference as a matter of fact that this treasurer had been capacitated to obtain loans for the institution. But in addition to this practice of the treasurer, there was testimony showing that on two or three occasions, in times of panic, when there had been runs upon the savings bank, the treasurer, without

previous authority, had obtained loans of money on the pledge of securities, from the defendant. It was, however, also shown that on such occasions the officers of the defendant, when making the loans, had been fully apprised of the urgency, and therefore must have known that there was no opportunity for obtaining the sanction of the managers of the plaintiff to such applications. It was obvious, therefore, that it was a question open to inquiry whether, at such times, the officers of the defendant had relied on the ostensible position of this treasurer, or had confided in the moral certainty that under such urgent and abnormal circumstances the acts of such treasurer would be ratified by the managers of the plaintiff. Nor was it certain, as the case stood before the jury, that the managers of the plaintiff were informed of such acts of their treasurer, done in anticipation of their approval, for their resolution embracing this subject, as recorded in their minutes, is in the form of an authority to obtain a loan in the future, and not by way of a ratification of a loan already obtained. It was also in evidence that after the occurrence of such unauthorized transactions on an application for a loan, the president of the defendant had required Boice to obtain from the managers of the savings bank a resolution authorizing such borrowing.

Under these conditions of the proofs, the question was properly left to the decision of the jury.

The verdict must, therefore, stand.