GRANT COUNTY STATE BANK, a Corporation, v. NORTH-WESTERN LAND COMPANY, a Corporation.

(150 N. W. 736.)

Defendant company and the First National Bank of Rugby occupied the same offices. Jones was cashier of the bank and treasurer of the company and later its vice president. In October, 1907, the bank by said cashier sold plaintiff some negotiable paper one note of which purported to be that of the defendant for $2,500, with said national bank as payee, and due in October, 1908. Defendant's directors and officials, besides Jones, did not authorize issuance of this note and knew nothing of it, and no part of the proceeds of the note was received by it, though plaintiff paid full-face value for the note to Jones. As its vice president Jones was in charge of defendant's offices, and before purchasing this note plaintiffs' cashier, Wells, inquired of Jones as to who the defendant's officials were and facts as to its worth, and was informed thereof and that Jones was its treasurer then, and when the note was signed shortly prior thereto. The purported signature to the note was "Northwestern Land Company, by A. H. Jones, Treasurer." Jones was not treasurer but vice president. Defendant's by-laws provided that no promissory note should be valid unless signed jointly by its president and treasurer. Both said officials were nonresidents of Rugby, where its principal and only office was maintained. From 1902 to 1907 Jones had been its treasurer and as such had largely transacted its business. He was superseded in January, 1907, but elected vice president, and continued apparently in charge of business. There is evidence that the actual authority of Jones was but little curtailed, and that the managing officers acquiesced thereafter in the assumption by Jones of authority he did not actually possess in its business affairs. Shortly before his removal as treasurer, he had unauthorizably borrowed from said national bank $2,500, for which he had given the company's note. It received the money,

and this loan was twice unauthorizably renewed by note, and ratified, and paid by the company. While treasurer he had disbursed much money, satisfied real estate mortgages, redeemed from real estate foreclosures, conducted its farming operations on a large scale, all under actual authority, and had more or less supervision of its business affairs, and had always been in charge of its offices though at times other officials were present during short intervals. It by-laws made the treasurer its disbursing officer. Defendant carried a checking account in said national bank, and its books and records were usually kept in the bank vaults. A printed form of checks on this account was provided with printed signature of "Northwestern Land Company, by ———— Treasurer." One hundred thirty of these checks, many of which bear the genuine signature of Jones, were issued with this form of signature, ostensibly by Jones as treasurer and after he had ceased to be such, and all with the knowledge and sanction of the company and its treasurer. The purported note of defendant purchased by plaintiff fell due in the fall of 1908. Just prior thereto Wells presented it to Jones as defendant's treasurer for payment, and he renewed it by a duplicate of the first, due one year later, indorsed and guaranteed by the bank, and delivered it to Wells, paying him the accrued interest, approximately $300, on the original note thus taken up. Evidence was received that this interest payment was not charged to defendant's account on the bank books, and that its moneys were not used in making this interest payment. The notes were not entered upon the company's records. Its officials other than Jones had no knowledge thereof. Wells, plaintiffs' cashier, when purchasing the original note and accepting the renewal, had no knowledge of the company's by-laws, and made no inquiry relative thereto, nor did he ask to be shown the same. He relied upon the information given him by Jones and upon the banks guaranty executed by Jones as its cashier. Wells did not know of Jones having issued corporate checks as ostensible treasurer, nor of the many acts performed by him while he had been treasurer. Before the maturity of renewal note, said national bank became insolvent and a receiver took charge. Later, when other officials of the defendant learned of this outstanding note and the transactions of plaintiff with Jones, they in defendant's behalf repudiated the note. It asserts Jones was without authority to issue its notes; that it was invalid under its by-laws; that the testimony of issuance of checks by Jones as ostensible treasurer is inadmissible as not having been known to Wells, and not having induced his purchase of the note, it is not estopped to deny liability; that the statements of Jones to Wells should not be considered as evidence of either actual or ostensible authority in Jones; that valid corporate negotiable paper cannot be issued under mere ostensible authority; that plaintiff has failed to make a prima facie case against defendant.

Trial was had without a jury and findings were made in defendant's favor on all questions of authority, the court finding that Jones had neither actual nor ostensible authority to issue the note. In the memorandum opinion of the trial court accompanying the findings, it appears that the finding of want

of ostensible authority was based on the fact found that the defendant was not guilty of want of ordinary care in permitting Jones to exercise the limited power actually conferred upon him.

**By-laws — contents — knowledge of — negligence.**

*Held:* 1. Wells was not charged with knowledge of the contents of the by-laws in the absence of actual knowledge thereof or of negligence in failing to acquaint himself with their contents.

**Officials of company — responsibility — statements — estoppel — authority.**

2. His inquiry at defendant's office of its vice president in charge, as to the personnel of its officials, and facts to elicit its financial responsibility, were made of its official authorized in its behalf to speak, and such statements of Jones, so made, bound the company and estopped it from denying the truth of such statements as here material, including his statement that he was its treasurer, not constituting a statement of his agency or his authority, but of independent facts, "not including the terms of his authority, but upon which his right to use his authority depends," binding the company under § 5772, Rev. Codes 1905.

**Negotiable instruments act — agency — ostensible authority — proof of — corporation — common law.**

3. Section 6321, Rev. Codes 1905, a part of the "negotiable instruments act," providing that the agent's authority to issue negotiable instruments "may be established as in other cases of agency," permits proof of the ostensible authority of the agent to act for the corporation in the issuance of its negotiable paper; but what shall constitute sufficient proof of such ostensible authority is left to the common law. The negotiable instruments act has not permitted less proof to establish such ostensible authority in the agent than would be required without that enactment.

**Commercial paper — authority of officers to issue — corporation — has implied corporate power — wrongful exercise of.**

4. This case involves the irregular or wrongful exercise of authority in the issuance of commercial paper on behalf of a corporation, instead of any want of power of the corporation to issue commercial paper,—an implied corporate power.

**Note — delivery of — interest payment — ostensible — treasurer — agent.**

5. The note is to be regarded as having been delivered to plaintiff by its ostensible treasurer, and the interest payment made is to be deemed a payment made by defendant's ostensible treasurer and agent.

**Liability — dependent upon authority of treasurer — prima facie case — question of fact.**

6. The defendant's liability depends upon the ostensible authority of its treasurer to issue its promissory notes under the circumstances of its issue;

28 N. D.—31.

and the facts in evidence are sufficient to present a prima facie case of liability thereon; the question of ostensible authority to issue such note is one of fact determinable under all the evidence bearing thereon.

**Ostensible treasurer — issuance of checks — company obligations — directors and officers — knowledge of — acquiescence — proof of.**

7. Issuance by Jones as treasurer, of checks and of other company obligations in its behalf, known to the company's directors and officials, and acquiesced in by them, is admissible as proof of ostensible authority in Jones to issue this negotiable paper.

**Ostensible authority — proof of — estoppel.**

8. It is immaterial that neither plaintiff nor its cashier, Wells, had knowledge of the facts offered tending to show such ostensible authority in Jones, as proof of ostensible authority does not depend upon or concern estoppel.

**Purchaser in due course — without notice — defects.**

9. Under the evidence plaintiff is entitled to a finding that it is a purchaser in due course and without notice of infirmity in the instrument, the purported promissory note.

**Evidence — original note — interest payment — treasurer had authority — agent's duty.**

10. Evidence that the interest payment of $300, made on the original note at the time of the execution of the renewal note, was not paid from defendant's funds, is immaterial and inadmissible, as it was a payment made by its treasurer clothed with authority under the by-laws to pay its debts, and his act was that of the company whether its money was used or not, and which, if erroneous, was but an error in performance of the agent's duty, and bound defendant his principal.

**Officers and treasurer — testimony — denying authority to act — inadmissible — by-laws — best evidence — conclusions.**

11. The testimony of the officers and treasurer that Jones had no authority to act, received over objections, constituted prejudicial error on the important question of the extent of Jones' authority. The records of meetings of the board of directors and the by-laws are the best evidence of actual authority in its officials; directors cannot testify to what amounts to but their conclusions upon the actual and ostensible authority of Jones.

**Officer — permitting to act as — negligence — findings.**

12. The proof presenting an intentional permitting of Jones to exercise ostensible authority as well as that of a negligent allowance thereof, and it appearing from the memorandum opinion filed that the question of negligence only was considered, the findings are held to not fully cover the issues presented.

Opinion filed September 8, 1914.   On petition for rehearing January 4, 1915.

From a judgment of the District Court of Grand Forks County, *Templeton,* J., plaintiff appeals.

Reversed and a new trial granted.

*Purcell & Divet,* for appellant.

Agency to execute negotiable paper may be established in the same way as agency to do any other act.   This is fixed and settled by our negotiable instrument law.   The issuance of commercial paper is within the implied powers of the defendant corporation.   Rev. Codes, 1905, § 6321; 10 Cyc. 1111, 1113, ¶ 2, 1114, ¶ 3, 1115, ¶ c, 1118, subdiv. b; Martin v. Webb, 110 U. S. 7, 28 L. ed. 49, 3 Sup. Ct. Rep. 428; Ford v. Hill, 92 Wis. 188, 53 Am. St. Rep. 902, 66 N. W. 115; Swedish American Nat. Bank v. Koebernick, 136 Wis. 473, 128 Am. St. Rep. 1090, 117 N. W. 1020.

Apparent authority in officer or agent is sufficient; as to the things the corporation can do, it will be bound by the acts of its representations with apparent authority.   Louisville, N. A. & C. R. Co. v. Louisville Trust Co. 174 U. S. 552, 570, 571, 574, 43 L. ed. 1081, 1089, 1090, 1091, 19 Sup. Ct. Rep. 817; Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L. ed. 1008; Ford v. Hill, 92 Wis. 188, 53 Am. St. Rep. 905, 66 N. W. 115; G. V. B. Min. Co. v. First Nat. Bank, 36 C. C. A. 633, 95 Fed. 33; Martin v. Webb, 110 U. S. 7, 28 L. ed. 49, 3 Sup. Ct. Rep. 428; Mahoning Min. Co. v. Anglo-Californian Bank, 104 U. S. 192, 26 L. ed. 707; Leroy & C. Valley Air-Line R. Co. v. Sidell, 13 C. C. A. 308, 26 U. S. App. 656, 66 Fed. 31; Egbert v. Sun Co. 126 Fed. 570; Armstrong v. Chemical Nat. Bank, 27 C. C. A. 601, 54 U. S. App. 462, 83 Fed. 569; Davenport v. Stone, 104 Mich. 521, 53 Am. St. Rep. 467, 62 N. W. 722; St. Clair v. Rutledge, 115 Wis. 583, 95 Am. St. Rep. 972, 92 N. W. 234; Kocher v. Supreme Council, C. B. L. 65 N. J. L. 649, 52 L.R.A. 861, 86 Am. St. Rep. 690, 48 Atl. 544; Jones v. Williams, 139 Mo. 1, 37 L.R.A. 682, 61 Am. St. Rep. 446, 39 S. W. 486, 40 S. W. 353; Hanover Nat. Bank v. First Nat. Bank, 48 C. C. A. 482, 109 Fed. 423; Olcott v. Tioga R. Co. 27 N. Y. 546, 84 Am. Dec. 301; Bank of United States v. Dandridge, 12 Wheat. 64, 6 L. ed. 552; St. Louis Gunning Advertising Co. v. Wannamaker & Brown, 115 Mo. App. 270, 90 S. W. 737; Florida Midland & G. R. Co. v. Varnedoe, 81 Ga. 175, 7 S. E. 129.

Where, as in this case, a corporation has the inherent power to issue

negotiable instruments, and any of its officers or agents assume to issue such paper, the presumption is conclusive in favor of an innocent holder, that such officer had authority.    Louisville, N. A. & C. R. Co. v. Louisville Trust Co. 174 U. S. 573, 43 L. ed. 1091, 19 Sup. Ct. Rep. 817; Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L. ed. 1008; Milwaukee Trust Co. v. Van Valkenburgh, 132 Wis. 638, 112 N. W. 1083; St. Clair v. Rutledge, 115 Wis. 583, 95 Am. St. Rep. 972, 92 N. W. 234; Gelpcke v. Dubuque, 1 Wall. 203, 17 L. ed. 524; Monument Nat. Bank v. Globe Works, 101 Mass. 57, 3 Am. Rep. 322; Bissell v. Michigan S. & N. I. R. Cos. 22 N. Y. 290; Northern Hudson Mut. Bldg. & Loan Asso. v. First Nat. Bank, 11 L.R.A. 846, note.

Especially is this true as to an officer or agent in charge of the corporate officer.    Kissam v. Anderson, 145 U. S. 435, 442, 36 L. ed. 765, 767, 12 Sup. Ct. Rep. 960.

A corporation cannot ignore the negligence of all its officers and profit by their omission of duty.    St. Clair v. Rutledge, 115 Wis. 583, 95 Am. St. Rep. 972, 92 N. W. 234; Armstrong v. Chemical Nat. Bank, 27 C. C. A. 601, 54 U. S. App. 462, 83 Fed. 571; Martin v. Webb, 110 U. S. 14, 28 L. ed. 52, 3 Sup. Ct. Rep. 428; Cook, Stock & Stockholders, 2d ed. §§ 620, 713; Thorington v. Gould, 59 Ala. 461; Hennessy Bros. & E. Co. v. Memphis Nat. Bank, 64 C. C. A. 125, 129 Fed. 557; Kissam v. Anderson, supra; Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 44 L. ed. 611, 20 Sup. Ct. Rep. 498; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 9 Am. St. Rep. 698, 17 N. E. 496; Dana v. National Bank, 132 Mass. 156; Whitaker v. Kilroy, 70 Mich. 635, 38 N. W. 606.

The agent's authority must be direct and specific, or the facts and circumstances must be of such a nature that the right to act may be fairly inferred.    Corey v. Hunter, 10 N. D. 12, 84 N. W. 570.

Corporations are only capable of speaking through their officers and agents, and parties dealing with them have the right to rely upon their statements and the appearances existing.    Thomp. Corp. § 4889, quoted in Helena Nat. Bank v. Rocky Mountain Teleg. Co. 20 Mont. 379, 63 Am. St. Rep. 635, 51 Pac. 829; Herman, Estoppel & Res Judicata; Quirk v. Thomas, 6 Mich. 119; Steinke v. Yetzer, 108 Iowa, 512, 79 N. W. 286; Cadillac State Bank v. Cadillac Stave & Heading Co. 129 Mich. 15, 88 N. W. 67.

Parties so dealing do not need to go elsewhere for information.   Tunison v. Detroit & L. S. Copper Co. 73 Mich. 452, 41 N. W. 502; Leroy & C. Valley Air-Line R. Co. v. Sidell, 13 C. C. A. 308, 26 U. S. App. 656, 66 Fed. 31; Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. Bridge Co. 131 U. S. 371, 33 L. ed. 157, 9 Sup. Ct. Rep. 770; Page v. Fall River, W. & P. R. Co. 31 Fed. 257; 10 Cyc. 111 et seq.

The evidence shows that it was contemplated by the corporation that it would be necessary in their business to give notes.   The by-laws provide for this also.   10 Cyc. 904, ¶ B., notes 74–76; Glidden & J. Varnish Co. v. Interstate Nat. Bank, 16 C. C. A. 534, 32 U. S. App. 654, 69 Fed. 912; Africa v. Duluth News Tribune Co. 82 Minn. 283, 83 Am. St. Rep. 424, 84 N. W. 1019; Richmond, F. & P. R. Co. v. Snead, 19 Gratt. 354, 100 Am. Dec. 677; Jones v. Williams, 139 Mo. 1, 37 L.R.A. 682, 61 Am. St. Rep. 436, 39 S. W. 486, 40 S. W. 353; Helena Nat. Bank v. Rocky Mountain Teleg. Co. 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; Dexter Sav. Bank v. Friend, 90 Fed. 703; Louisville, N. A. & C. R. Co. v. Louisville Trust Co. 174 U. S. 573, 43 L. ed. 1091, 19 Sup. Ct. Rep. 817; Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L. ed. 1008; St. Clair v. Rutledge, 115 Wis. 583, 95 Am. St. Rep. 964, 92 N. W. 234; Claflin v. Lenheim, 66 N. Y. 305; Bennett v. Curry, 21 N. Y. Supp. 47.

Holding out an ostensible agency and ratification of unauthorized acts are all akin to estoppel, and exist as elements of estoppel.   Thomp. Corp. § 4889.

One ought to safely rely upon the word and representations of the treasurer of a corporation.   When he speaks with reference to a subject over which the corporation has authority, it is the corporation speaking. Whitaker v. Kilroy, 70 Mich. 635, 38 N. W. 606; Hirschmann v. Iron Range & H. B. R. Co. 97 Mich. 384, 56 N. W. 842; Beattie v. Delaware, L. & W. R. Co. 90 N. Y. 643; St. Clair v. Rutledge, 115 Wis. 583, 95 Am. St. Rep. 964, 92 N. W. 234; Hennessy Bros. & E. Co. v. Memphis Nat. Bank, 64 C. C. A. 125, 129 Fed. 560.

Unless waived, findings of fact must be made by the trial court. Garr, S. & Co. v. Spaulding, 2 N. D. 414, 51 N. W. 867; Rev. Codes, 1905, § 7041; 38 Cyc. 1974, note 24, 1962, Subdiv. B. Rev. Stat. § 649; Anglo-American Land, Mortg. & Agency Co. v. Lombard, 68 C. C. A. 89, 132 Fed. 721, and cases cited; Briere v. Taylor, 126 Wis. 347,

105 N. W. 817; Wood v. La Rue, 9 Mich. 160; Adams v. Champion, 31 Mich. 233; Hudson v. Roos, 72 Mich. 363, 40 N. W. 467; Bates v. Wilbur, 10 Wis. 416; Humpfner v. D. M. Osborne & Co. 2 S. D. 310, 50 N. W. 90; Barton v. Northern Assur. Co. 10 S. D. 132, 72 N. W. 86; Hardin v. Branner, 25 Iowa, 368; Chesapeake Ins. Co. v. Stark, 6 Cranch, 268, 3 L. ed. 220; Prentice v. Zane, 8 How. 470, 12 L. ed. 1160; Pint v. Bauer, 31 Minn. 4, 16 N. W. 425; Hodge v. Ludlum, 45 Minn. 290, 47 N. W. 805; People v. Fuqua, 61 Cal. 378; Noblesville Gas & Improv. Co. v. Loehr, 124 Ind. 79, 24 N. E. 579; Evansville & R. R. Co. v. Maddux, 134 Ind. 571, 33 N. E. 345, 34 N. E. 511; Wells, Railroad Corp. pp. 34 et seq.; Rev. Codes 1905, § 7229.

*Bangs, Netcher, & Hamilton* for respondents.

There is no difference in principle or precedent between the powers, duties, and liabilities of the agents of corporations and those of natural persons, unless expressly made so by the act of the corporation, or by the by-laws.    New York, P. & B. R. Co. v. Dixon, 114 N. Y. 80, 21 N. E. 110; Jones v. Williams, 139 Mo. 1, 37 L.R.A. 682, 61 Am. St. Rep. 436, 39 S. W. 486, 40 S. W. 353; Ford v. Hill, 92 Wis. 188, 53 Am. St. Rep. 902, 66 N. W. 115; Rev. Codes 1905, §§ 5770, 5784; Story, Agency, 126; Corey v. Hunter, 10 N. D. 12, 84 N. W. 570; Busch v. Wilcox, 82 Mich. 336, 21 Am. St. Rep. 563, 47 N. W. 328; Trull v. Hammond, 71 Minn. 172, 73 N. W. 642; Ermentrout v. Girard F. & M. Ins. Co. 63 Minn. 305, 30 L.R.A. 346, 56 Am. St. Rep. 481, 65 N. W. 635.

One dealing with a supposed agent is bound to ascertain the scope of his authority, otherwise he assumes the risk and must suffer the consequences.    Cornish v. Woolverton, 32 Mont. 456, 108 Am. St. Rep. 613, 81 Pac. 4; Dodge v. Birkenfeld, 20 Mont. 115, 49 Pac. 590; Cleveland v. Pearl, 63 Vt. 127, 25 Am. St. Rep. 748, 21 Atl. 261; Franklin F. Ins. Co. v. Bradford, 88 Am. St. Rep. 780, note 1; Chaffe v. Stubbs, 37 La. Ann. 656; Siebold v. Davis, 67 Iowa, 560, 25 N. W. 778; Bohart v. Oberne, 36 Kan. 284, 13 Pac. 388; White v. Langdon, 30 Vt. 599; Adams v. Herald Pub. Co. 82 Conn. 448, 74 Atl. 755; Baker v. Seaweard, 63 Or. 350, 127 Pac. 961; Brown v. Johnson, 12 Smedes & M. 398, 51 Am. Dec. 118; Strawn Farmers' Elevator Co. v. James E. Bennett & Co. 168 Ill. App. 428; United States Bedding Co. v. Andre, 105 Ark. 111, 41 L.R.A.(N.S.) 1019, 150 S. W. 413, Ann. Cas. 1914D

800; Vanada v. Hopkins, 1 J. J. Marsh. 285, 19 Am. Dec. 92; Tidrich v. Rice, 13 Iowa, 214; Kraniger v. People's Bldg. Asso. 60 Minn. 94, 61 N. W. 904; Farmers' & M. Bank v. Butcher's & D. Bank, 16 N. Y. 125, 69 Am. Dec. 678; Pearce v. Madison & I. R. Co. 21 How. 441, 16 L. ed. 184; Dabney v. Stevens, 40 How. Pr. 341; French v. O'Brien, 52 How. Pr. 394; 1 Am. & Eng. Enc. Law, 2d ed. 988; Hurley v. Watson, 68 Mich. 531, 36 N. W. 726.

When a note is executed by an agent whose authority for that purpose is denied, the burden of proving authority rests with the party seeking to enforce payment of the note.   Miller v. House, 67 Iowa, 737, 25 N. W. 899; 1 Am. & Eng. Enc. Law, 2d ed. 968; Montgomery v. Pacific Coast Land Bureau, 94 Cal. 284, 28 Am. St. Rep. 122, 29 Pac. 640; Kelly v. Strong, 68 Wis. 152, 31 N. W. 721; Towle v. Leavitt, 23 N. H. 360, 55 Am. Dec. 195; Snow v. Perry, 9 Pick. 542; Denning v. Smith, 3 Johns. Ch. 332, note; Story, Agency, § 133.

An agent can only contract for his principal within the limit of his authority, and a person dealing with such agent must inquire about and ascertain the extent of his authority.   Swindell v. Latham, 145 N. C. 144, 122 Am. St. Rep. 434, 58 S. E. 1010; Blum v. Whipple, 120 Am. St. Rep. note, 556; Moore v. Skyles, 33 Mont. 135, 3 L.R.A.(N.S.) 136, 114 Am. St. Rep. 802, 82 Pac. 799; Bickford v. Menier, 107 N. Y. 490, 14 N. E. 438; Dyer v. Duffy, 39 W. Va. 148, 24 L.R.A. 339, 19 S. E. 540; Owings v. Hull, 9 Pet. 607, 9 L. ed. 246.

The fact of agency cannot be proved by the declarations of the agent. Somers v. Germania Nat. Bank, 152 Wis. 210, 138 N. W. 713; Bond v. Pontiac, O. & P. A. R. Co. 62 Mich. 643, 4 Am. St. Rep. 885, 29 N. W. 482; Fisher v. Denver Nat. Bank, 22 Colo. 373, 45 Pac. 440; Leu v. Mayer, 52 Kan. 419, 34 Pac. 969; Bacon v. Johnson, 56 Mich. 182, 22 N. W. 276; Plano Mfg. Co. v. Root, 3 N. D. 165, 54 N. W. 924.

Admissions or declarations of an agent are not admissible to establish the fact of agency or the extent of authority.   Taylor v. Commercial Bank, 174 N. Y. 181, 62 L.R.A. 783, 95 Am. St. Rep. 564, 66 N. E. 726; Somers v. Germania Nat. Bank, 152 Wis. 210, 138 N. W. 713; 1 Am. & Eng. Enc. Law, 690; McPherrin v. Jennings, 66 Iowa, 622, 24 N. W. 242; Wood Mowing & Reaping Mach. Co. v. Crow, 70 Iowa, 340, 30 N. W. 609; Bacon v. Johnson, 56 Mich. 182, 22 N. W. 276; Marvin v. Wilber, 52 N. Y. 270; Gordon v. Vermont Loan & T. Co. 6 N. D.

454, 71 N. W. 556; Walsh v. St. Paul Trust Co. 39 Minn. 23, 38 N. W. 631.

That one assumes to act as agent is not sufficient to show the relation unless his acts are so open and notorious that it is evident they must have been known to the principal and assented to by him. 1 Am. & Eng. Enc. Law, 2d ed. 969; Reynolds v. Continental Ins. Co. 36 Mich. 131; Walsh v. St. Paul Trust Co. 39 Minn. 23, 38 N. W. 631; Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Rev. Codes, 1905, §§ 5770, 5784.

There must be belief of agency by the party dealing with a person holding himself out as an agent, and such belief must be caused by some · act or neglect of the person to be held. Harris v. San Diego Flume Co. 87 Cal. 526, 25 Pac. 758; Weidenaar v. New York L. Ins. Co. 36 Mont. 592, 94 Pac. 1; Gibson v. Trow, 105 Wis. 288, 81 N. W. 411; Jackson Paper Mfg. Co. v. Commercial Nat. Bank, 199 Ill. 151, 59 L.R.A. 657, 93 Am. St. Rep. 113, 65 N. E. 136; First Nat. Bank v. Farmer's & M. Bank, 56 Neb. 149, 76 N. W. 430; Rodgers v. Peckham, 120 Cal. 238, 52 Pac. 483; 2 Enc. L. & P. 960.

The doctrine of apparent or ostensible agency or authority cannot be invoked by one who has relied only upon the alleged agent's declarations of his authority, and made no future inquiry. Christ v. Garretson State Bank, 13 S. D. 23, 82 N. W. 89; Harris v. San Diego Flume Co. 87 Cal. 526, 25 Pac. 758; Robinson v. Nipp, 20 Ind. App. 156, 50 N. E. 408; O. W. Loverin-Browne Co. v. Bank of Buffalo, 7 N. D. 569, 75 N. W. 923; 31 Cyc. 1217, 1236; Rev. Codes 1905, § 5769; Gregory v. Loose, 19 Wash. 599, 54 Pac. 33.

The extent of the implied authority of an agent is limited to acts of a like kind with those from which it is implied is fully supported by the authorities. Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Jackson Paper Mfg. Co. v. Commercial Nat. Bank, 199 Ill. 151, 59 L.R.A. 657, 93 Am. St. Rep. 113, 65 N. E. 136; Trent v. Sherlock, 24 Mont. 255, 61 Pac. 650; Moyle v. Congregational Soc. 16 Utah, 69, 50 Pac. 806; McAlpin v. Cassidy, 17 Tex. 449; 2 Enc. L. & P. 952; Dan. Neg. Inst. § 293; 1 Parsons, Contr. 6th ed. p. 62.

Authority to make a negotiable instrument must be expressly conferred or be necessarily implied from the peculiar circumstances of each case. It will not be implied from a mere appointment as general agent.

Mechem, Agency, § 398; Helena Nat. Bank v. Rocky Mountain Teleg. Co. 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; Dan. Neg. Inst. 292; Foster v. Ohio-Colorado Reduction & Min. Co. 5 McCrary, 329, 17 Fed. 130; Dexter Sav. Bank v. Friend, 90 Fed. 703.

The agent must have either express general authority to issue such paper or express power to issue the particular paper, or there must be implied general authority arising from such frequent exercise of the power by the agent, followed by ratification as to constitute a custom of the corporation.   Elwell v. Puget Sound & C. R. Co. 7 Wash. 487, 35 Pac. 376; New York Iron Mine v. First Nat. Bank, 39 Mich. 644, 1 Mor. Min. Rep. 453; Bank of Commerce v. Baird Min. Co. 13 N. M. 424, 85 Pac. 970; Dan. Neg. Inst. §§ 289, et seq.; Bank of Deer Lodge v. Hope Min. Co. 3 Mont. 146, 35 Am. Rep. 458, 1 Mor. Min. Rep. 448; Blum v. Robertson, 24 Cal. 140; City Electric Street R. Co. v. First Nat. Exch. Bank, 62 Ark. 33, 31 L.R.A. 535, 54 Am. St. Rep. 282, 34 S. W. 89; American Exch. Nat. Bank v. Oregon Pottery Co. 55 Fed. 265.

The question of agency must always be determined from the peculiar facts and circumstances of each case.   2 Morawetz, Priv. Corp. § 608.

A person dealing with an agent, knowing that he acts only by a delegated authority or power, must at his peril see that the paper on which he relies comes within the scope and power of the agent.   Judge Miller of Supreme Court of the U. S., The Floyd Acceptances (Pierce v. United States) 7 Wall. 666, 19 L. ed. 169.

The acts of an ostensible agent must be known to plaintiff so that it may be possible for plaintiff to have been influenced by them.   A single act importing agency and authority, and unknown to plaintiff, would prove nothing.   Stanley v. Sheffield, Land, Iron & Coal Co. 83 Ala. 260, 40 So. 34; Adams v. Herald Pub. Co. 82 Conn. 448, 74 Atl. 755.

The treasurer of a corporation is not such an officer as is vested with implied power to make and issue negotiable paper in its name.   Oak Grove & S. V. Cattle Co. v. Foster, 7 N. M. 650, 41 Pac. 522; Fifth Ward Sav. Bank v. First Nat. Bank, 48 N. J. L. 513, 7 Atl. 318; Torrey v. The Dustin Monument Asso. 5 Allen, 327; Railway Equipment & Pub. Co. v. Lincoln Nat. Bank, 82 Hun, 8, 31 N. Y. Supp. 44; Union Gold Min. Co. v. Rocky Mountain Nat. Bank, 2 Colo. 565; White v. Madison, 26 N. Y. 117.

An innocent purchaser for value, without notice, of a negotiable note of a corporation, takes it at his peril as to the authority of the officer to draw such note for it. Against such a purchaser the corporation may plead want of authority in such officer to bind it. Chemical Nat. Bank v. Wagner, 93 Ky. 525, 40 Am. St. Rep. 206, 20 S. W. 535.

Where there is an entire want of power, a note is not made good by transfer before maturity to a bona fide purchaser. 10 Cyc. 1114 Sub. 3 note B.

Such a note is void. Elliott Nat. Bank v. Western & A. R. Co. 2 Lea, 677; Dexter Sav. Bank v. Friend, 90 Fed. 703.

In an action against a corporation on a note, where its execution is denied, the burden of showing the authority by which it was executed is on the plaintiff. Walsenburg Water Co. v. Moore, 5 Colo. App. 144, 38 Pac. 60; Sears v. Daly, 43 Or. 346, 73 Pac. 5; Chicago Electric Light Renting Co. v. Hutchinson, 25 Ill. App. 476; Topeka Capital Co. v. Remington Paper Co. 61 Kan. 6, 59 Pac. 1062; Miller v. House, 67 Iowa, 737, 25 N. W. 899; Marshall Field Co. v. Oren Ruffcorn Co. 117 Iowa, 157, 90 N. W. 618; McRobert v. Crane, 49 Mich. 483, 13 N. W. 826; Parr v. Northern Electrical Mfg. Co. 117 Wis. 278, 93 N. W. 1099; Oberne v. Burke, 30 Neb. 581, 46 N. W. 838.

An agent's apparent powers are those which are conferred by the terms of his appointment, or those with which he is clothed by the character in which he is held out to the world, although not strictly within his commission. Mechanics' Bank v. New York & N. H. R. Co. 13 N. Y. 633; 1 Am. & Eng. Enc. Law, 960; Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827; Wierman v. Bay City-Michigan Sugar Co. 142 Mich. 422, 106 N. W. 75; Leu v. Mayer, 52 Kan. 419, 34 Pac. 969.

Appellant knew it was dealing with a corporation and was chargeable with notice of Jones' authority, and of the limitations upon it, contained in the corporate act and its by-laws. Dabney v. Stevens, 40 How. Pr. 341; French v. O'Brien, 52 How. Pr. 394; 1 Am. & Eng. Enc. Law, 2d ed. 968; Montgomery v. Pacific Coast Land Bureau, 94 Cal. 284, 28 Am. St. Rep. 122, 29 Pac. 640; Kelly v. Strong, 68 Wis. 152, 31 N. W. 721.

Where no authority was shown the admission of the note in evidence was prejudicial error. Marshall Field Co. v. Oren Ruffcorn Co. 117 Iowa, 157, 90 N. W. 618; Louisville, N. A. & C. R. Co. v. Louisville

Trust Co. 174 U. S. 552, 43 L. ed. 1081, 19 Sup. Ct. Rep. 817; G. V.
B. Min. Co. v. First Nat. Bank, 36 C. C. A. 633, 95 Fed. 33.

Goss, J.   This is an action at law on a promissory note of Northwest-
ern Land Company.   It is a renewal note of one for the same amount
to said national bank as payee, and by it assigned to plaintiff as a pur-
chaser in due course for full value and before maturity.   The signature
of the defendant to both the original and the renewal note was affixed
with a rubber stamp by Jones, who signed his name, so that the pur-
ported signatures read: "Northwestern Land Company, by A. H.
Jones, Treasurer."   Jones was not treasurer, but vice president.   He
was also cashier of said First National Bank.   The principal place of
business of the defendant company was in the same office as was that of
the First National Bank of Rugby, in the vault of which bank was kept
defendant's records, and inside and outside of which building defend-
ant had its signs displayed, noticing its place and kind of business.   De-
fendant is an ordinary trading corporation "for the purchase, owner-
ship, sale, and management of titles to, interest in, and liens upon real
estate; and for the purchase, ownership, sale, and management of
stock."   Jones was one of its three incorporators and always a member
of its board of directors.   He was the only resident official, as all others
resided in Grand Forks, and were but occasionally and temporarily at
Rugby.   Jones became vice president in January, 1907, when the for-
mer president, F. W. Wilder, succeeded him as treasurer.   Some eastern
stockholder became suspicious that there were irregularities in the trans-
actions of Jones with the company, and were responsible for an investi-
gation of its books in November, 1905.   July 6, 1905, Jones had
unauthorizedly as treasurer of defendant company executed to the First
National Bank, of which he was cashier, the company's note for $2,500,
for which the company received full value.   This note was twice unau-
thorizedly after its ratification renewed by Jones as treasurer.   No
change was made in the actual authority of Jones, so far as the evidence
discloses, and Jones remained its treasurer until 1907.   But in the spring
of 1906 president Wilder, to use his words, "was there a great deal of
the time," to keep a check on the operations of Jones and to actually as-
certain what was being done, and to participate in the affairs of the
company.   Its business then and thereafter consisted almost entirely in

managing and handling its farms, some forty quarter sections. The actual authority of the treasurer under the by-laws at all times was that of a general manager. The by-laws provide: "The treasurer shall be the custodian of all the funds, deeds, and property, real and personal, and all evidences of title, ownership, or indebtedness of every kind and description belonging to the corporation. Subject to the control of the board of directors, he shall have the general management of the affairs of the company, with power to contract for the corporation, and to invest the corporate funds within the limitations prescribed, and with authority to execute in the corporation's name and behalf any and all instruments affecting titles to, liens upon, and interests in real and personal property which shall be required to make his contracts operative." This general power, however, was limited by another by-law, dated November 22, 1905, evidently passed at the time of said examination of the records, reading: "But notwithstanding anything hereinbefore contained, the treasurer's power to make any contracts or instruments, affecting in any way the title to any of the real estate of the company or any lien thereon or interest therein, shall not be exercised except with the assent of a majority of the directors." The by-laws also provided that the treasurer "shall have general management of the corporation business, with authority to contract in its behalf, to collect, invest, and disburse its funds, and shall perform such other duties as in law devolve upon the executive officer of such corporations;" conditioned that "the power to contract indebtedness rests with the board of directors, no evidence of the indebtedness shall be valid against the corporation unless the same shall be executed in the corporation's name by the president and treasurer jointly." These by-laws were received over plaintiff's objection. It and its cashier, Wells, at all times had been ignorant of their provisions. From 1902 to 1907 Jones as treasurer had exercised to the full at least the actual authority reposed in such office by the by-laws. He had as treasurer redeemed property from real estate foreclosure, and had satisfied real estate mortgages, and had disbursed money in considerable amounts. Checks of the company on the First National Bank were customarily issued on printed blanks by Jones as treasurer, and were paid. The unauthorized promissory note for $2,500 of the defendant to the First National Bank of Rugby was unauthorizedly renewed in January, 1906, by Jones as treasurer, he

shortly afterwards notifying President Wilder thereof, however, and on November 3, 1906, this note was again renewed for $2,500. These notes bore 12 per cent interest, which presumably was paid, the second renewal note bearing the stamp, "paid November 22, 1907," though Wilder testifies that the same was paid at a later date, in May, 1908. Jones was always in *sole charge* of the company's correspondence. In 1907 and 1908 Wilder, then treasurer, to quote his testimony, "After January, 1907, I spend very little time there, still less probably; " and again, "In 1907 and 1908 I was not there very much of any time. . . . it would be very difficult for me to tell you how often I was present in Rugby during the year. I was there very seldom, not many times, perhaps five or six. I stayed only a short time on each occasion." During 1907 and 1908, as always, the power to issue checks and make payments of money was recognized as possessed by Jones, whether he was treasurer or vice president, and during the years he was vice president the evidence discloses nearly 150 paid checks, with Jones' name affixed to the printed checks ahead of the word "treasurer." Many of these bear the genuine signature of Jones, and on others the bank clerks affixed his purported signature, the check thus signed being used as a voucher against defendant's account with the bank. In other words, during this time while Jones was vice president, he was continually issuing and putting in circulation company checks as its ostensible treasurer, and this with the admitted knowledge, acquiescence, and sanction of Wilder, the treasurer, to which office general power was delegated by both by-laws and by the board of directors to superintend corporation affairs. This authority in Jones is shown by the proof to have always been exercised in good faith, and within the scope of his actual authority under Wilder to issue such checks in tthe payment of farming operations of the company during the years 1907 and 1908. Wilder testifies as follows: "I checked up the matter of checks that were given at intervals when I went out there. Whenever I went out there I checked up the account. I knew that during the year 1908 Jones was using the blank printed form, and not scratching out 'treasurer.' I knew that that form was being used in a large number of instances, either by Jones himself or his employees after the act was performed. I saw all those checks. These checks extend over a considerable period of time. I knew that from time to time as I checked up the account. I did not dis-

cover it all at one time.    These checks were paid out of the account of
the Northwestern Land Company."    It also appears that many of these
checks were mere vouchers filled out by clerks in the bank as memorand-
ums of charges against the defendant's account.    Dozens of them, how-
ever, bear Jones' genuine signature, and presumptively were put in cir-
culation before payment.    It also appears that loan interest was paid by
Jones the same way and during the same period, some of it on direction
of Wilder to pay the same, without any particular instructions as to
the methods of payment.

The facts concerning the purchase of the note are that plaintiff's
cashier, Wells, went to Rugby in October, 1907, and met Jones in the
First National Bank office, and in the course of negotiations for the pur-
chase of commercial paper of the bank, was offered by it, acting through
Jones, its cashier, a note, purporting to be that of the Northwestern
Land Company to the said First National Bank, for $2,500, bearing
date of a few days before and due in one year, with interest at 12 per
cent.    Wells then inquired as to the "standing of the land company, its
capital stock, what property it had, and who was connected with it."
Jones informed him that its authorized capital was $200,000, with
$93,000 paid in, and that the company's net worth was about $110,000,
that Wilder was connected with it, that Jones was an officer of the com-
pany, "that he signed the note as treasurer, and that he was the treasur-
er of the company, that Wilder was president."    Wells then made a
memorandum of Jones' statements concerning the responsibility of the
makers of this and of the other notes offered for purchase, and made in-
quiries of an old acquaintance residing near Rugby, and other residents
of the Rugby and county officials.    As a result of favorable information
so obtained, Wells purchased from the bank, acting through Jones as its
cashier, some $8,500 worth of commercial paper, including this note,
paying full value therefor to the national bank, which it by Jones as
cashier not only indorsed, but guaranteed.    A year afterwards, or on
October 26, 1908, Wells reappeared at Rugby.    He told Jones, acting
officer in charge of defendant's business and offices, that it would be per-
fectly satisfactory to have the Northwestern Land Company note re-
newed on the same conditions under which the original note had been
given, which resulted in the execution and delivery of the note sued on,
a duplicate of the original purchased and running to the First National

Bank as payee, and indorsed and guaranteed by it through Jones as cashier. Jones gave Wells for the plaintiff the draft of the First National Bank for the approximately $300 interest accrued on the purported old note of the defendant, which draft was paid in due course. Wells believed Jones to be the treasurer of the defendant, and had no information that he was not such official, or was not actually authorized to execute this negotiable paper in behalf of the corporation. The original note was purchased, and the renewal thereof permitted and accepted on the strength of the financial standing of the defendant company, together with the indorsement and written guaranty of the First National Bank by Jones, its cashier. In 1908 Wells was in the office "probably ten or a dozen times, that is, different trips there; was in and out a number of times when there,—in fact, made my headquarters there." It is not shown that Wells knew that Jones was permitted to or had ever issued checks or any other paper on behalf of the defendant. When taking the renewal note, Wells made no inquiries as to who the officials of the land company were, or as to whether Jones was its treasurer, relying on his acts and the information given by Jones the year before. There is in evidence, all received over plaintiff's objection, the testimony of the assistant receiver for the First National Bank, which bank went into a receiver's hands in January, 1909, to the effect that the bank books did not show any entry in connection with either the original or the renewal note in question, and that the interest payment on such renewal of the original note was not paid out of the funds of the defendant company; and also that more of purported notes of the First National Bank negotiated by Jones were not entered upon the bank books. It was also shown, over objection, that the defendant received no value from the First National Bank or from any person for the first note or the renewal, and repudiated the whole transaction, and denied its liability on the note as soon as its officials, other than Jones, became cognizant thereof, presumably sometime after the bank had gone into the receiver's hands.

Plaintiff's claim to a recovery is based upon alleged ostensible authority of Jones to act as treasurer, and his ostensible authority in such capacity to issue this note in defendant's behalf. Defendant asserts that the acts of Jones were not its acts, and that whatever was done by him was beyond the scope of his either actual or ostensible authority;

that all evidence of the issue of checks by Jones was immaterial, as unknown to plaintiff, and not inducing its purchase or subsequent acts; that the by-laws, limiting the actual authority of Jones' imputed constructive notice to plaintiff of their contents, and charged plaintiff with knowledge of the want of actual authority in Jones to execute its negotiable paper; that the statements of Jones that he was its treasurer cannot be considered as establishing either actual or ostensible authority in him to act as such, or establish his agency to bind defendant; that an apparent agency is insufficient to obligate defendant on its purported note, and actual authority in Jones to issue its negotiable paper must be shown; that no facts upon which an estoppel against defendant can be based are disclosed, and no relationship of principal and agent by estoppel can be found to have existed; that this is a case of utter want of power in Jones to issue this negotiable paper, not a case of irregular exercise of the power conferred; that the burden of proof was upon the plaintiff, and it has failed to make a prima facie case.

The court made findings of fact and conclusions of law in defendant's favor, and judgment of dismissal was entered, from which plaintiff appeals on specifications of error and assignments in its brief, necessitating a review of all the evidence, and a determination of whether the findings are sustained by any competent evidence. Though tried to the court, the findings have the force of a jury's findings. So far as necessary all matters so raised will be discussed and passed upon.

This is a trading corporation. To issue commercial paper one of its implied powers, it not being restricted from so doing by its charter or by statute. 10 Cyc. 1111; Thomp. Corp. 2d ed., §§ 2185–2192. This promissory note, if void, must be so because of the irregular or wrongful exercise of the power, instead of any want of power in the corporation to issue commercial paper. If, then, this note is issued under actual or ostensible authority for its issue, it is the corporation's note and binding upon it. But its officer, purporting to act for it as its treasurer, was not such in fact, but instead was its vice president. Whether the company is bound by the act of its vice president as the act of its treasurer depends upon whether the vice president had ostensible authority from it to so act as its treasurer, or is estopped to allege he was not treasurer, and, in addition, in either event it is also necessary that plaintiff further establish either actual or ostensible authority in the treasurer to issue negotiable paper for defendant.

The authorities recognize the theory of ostensible authority in a corporate agent to issue negotiable paper in behalf of a corporation, but usually limit the scope of such claimed ostensible authority: Mechem, Agency, §§ 389, 390; Blood v. La Serene Land & Water Co. 113 Cal. 221, 41 Pac. 1017, 45 Pac. 252; Sanford Cattle Co. v. Williams, 18 Colo. App. 378, 71 Pac. 889; Bank of Commerce v. Baird Min. Co. 13 N. M. 424, 85 Pac. 970; Helena Nat. Bank v. Rocky Mountain Teleg. Co. 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; New York Iron Mine v. First Nat. Bank, 39 Mich. 644, 1 Mor. Min. Rep. 453; Henderson Mercantile Co. v. First Nat. Bank, 100 Tex. 344, 99 S. W. 850; Crawford v. Albany Ice Co. 36 Or. 535, 60 Pac. 14; Grommes v. Sullivan, 43 L.R.A. 419, 26 C. C. A. 320, 53 U. S. App. 359, 81 Fed. 45; Hennessy Bros. & E. Co. v. Memphis Nat. Bank, 64 C. C. A. 125, 129 Fed. 557; Merchants'. Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L. ed. 1008; Armstrong v. Chemical Nat. Bank, 27 C. C. A. 601, 54 U. S. App. 462, 83 Fed. 556, as modified in Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 44 L. ed. 611, 20 Sup. Ct. Rep. 498. Section 19 of the uniform negotiable instruments act, as enacted in chap. 113, Sess. Laws, 1899, § 6321, Rev. Codes, 1905, provides: "The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency." This declares the authority of this agent of the corporate principal may be established as in other cases of agency, i. e., by proof of the ostensible authority of the agent; but upon what shall constitute sufficient proof of ostensible authority of the agent to issue negotiable paper of the various kinds the statute is silent. That is left to the common law or other statutes for definition and limitation. The negotiable instruments act has not permitted less proof to establish such ostensible authority in the agent than would be required without it.

In its relation to agency our statute, § 5770, Rev. Codes 1905, defines ostensible authority to be, "such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess;" and § 5768, Rev. Codes 1905, declares: "An agent has such authority as the principal actually or ostensibly confers upon him." Its application presupposes, of course, the existence of the relation of principal and agent. But all proof in this case of actual as well as ostensible authority establishes that at all times Jones has been

28 N. D.—32.

the agent of the corporation principal, and at the times in question was its vice president, and as such in sole charge of its principal place of business. The statute defining ostensible authority is but a codification of the common law on the subject. "All authority emanates from the principal, who may confer as little or as much as suits his purposes, and unless an alleged authority can be traced home to him as its author and its source, it cannot operate against him. It rests upon his will and intention. That will and intention may find expression in words, but it may also be declared by conduct. The authority of the agent, then, so far as third persons are concerned, is as broad, not only as the words of *the principal,* but *as broad also as his acts and conduct.* In other phrase it is, so far as third persons are concerned, as broad as *the principle has made it appear to be.* As respects the mutual rights and dealings of the principal and agent, the actual authority may govern, but as respects the liability of the principal to third persons for the acts and contracts of the agent, it is the apparent authority which controls. This apparent authority may be the result of his negligent act,—of his omission, silence, or acquiescence. . . . If the principal leads third persons acting reasonably in good faith to believe that his agent possesses a certain authority, then as to them he does possess it;" Mechem, Agency, § 707. This is but the stating in other language of §§ 5768, 5769, and 5770, Rev. Codes 1905, defining actual and ostensible authority of agents. "While, as has been stated, persons dealing with the agent are bound to know the extent of his authority, they may reasonably take the visible and apparent interpretation of that authority by the principal himself as the true one and as the one by which he chooses to be bound." Same authority, § 708. Applying these rules to facts necessitates a conclusion upon, first, whether Jones as its vice president had ostensible authority to represent defendant in the capacity of its treasurer in its dealings with third persons; and, if so, whether he had ostensible authority under the circumstances to issue and deliver this particular note as that of the corporation.

The question now arises, To what extent do the by-laws and records of the defendant corporation affect this plaintiff, who dealt in ignorance of them? So far as they grant actual authority they are binding upon the defendant; so far as they restrict the ostensible authority of its vice president, and in the absence of negligence on the plaintiff's part, they do not limit plaintiff's right to deal under and in reliance upon the

ostensible authority of that agent.   Knowledge of the by-laws and contents of the corporate books are not imputed to plaintiff, in the absence of negligence.   It had the right to deal in the customary manner and in ignorance of them.   True, it was bound to know at its peril that it was dealing with an agent of the corporation, and an agent with either actual or ostensible authority to act and to issue corporate paper; but further than that it need not inquire when so dealing.   The rule that a person, dealing with an agent in ignorance of his actual authority as defined by the by-laws, is not protected, but is presumed to have knowledge of the agent's actual authority as evidenced by the by-laws, is in force in but few jurisdictions, and is contrary to the weight of authority in the absence of a statute so providing.   No statute here covers this question.   Consult §§ 4201–4226, Rev. Codes 1905, as to corporations generally.   "The apparent authority of an agent of a corporation cannot be extended or restricted as against a stranger by by-laws of such corporation in the absence of actual knowledge thereof."   Thompson on Corporations, §§ 1055 & 1687, citing many authorities, some of which are Johnston v. Milwaukee & W. Invest. Co. 46 Neb. 480, 64 N. W. 1100; Rathburn v. Snow, 10 L.R.A. 355, note; Moyer v. East Shore Terminal R. Co. 25 L.R.A. 48, and note, 41 S. C. 300, 44 Am. St. Rep. 709, 19 S. E. 651; Ashley Wire Co. v. Illinois Steel Co. 164 Ill. 149, 56 Am. St. Rep. 187, 45 N. E. 410; Anglo-Californian Bank v. Grangers' Bank, 63 Cal. 359; Austin v. Searing, 69 Am. Dec. 665, note; State v. Overton, 24 N. J. L. 435, 61 Am. Dec. 671.   See also 10 Cyc. 924.   "The person dealing with the agent is only entitled to assume that he has such powers as the principal has expressly or impliedly held him out to possess.   If the agent is not held out as belonging to a definite class whose powers are established by custom, and the corporation has not acquiesced in a course of dealing by the agent in this character, then the party dealing with the agent must at his peril ascertain what powers have been actually delegated to him, and if these powers are conferred by a by-law he must ascertain its terms."   Thomp. Corp. § 1688.   But, "corporations are held to whatever is within the apparent scope of the powers with which they have either *intentionally* or *negligently* clothed their agents, unless the parties with whom such agents contract have notice that their powers are limited.   Third persons will not be affected by secret instructions given agents restricting these pow-

ers. The principle is that a person is bound to know whether an officer or agent of a corporation is authorized to act in its name. If he is, and the act is within the apparent scope of his authority, he is not bound to have knowledge of extrinsic facts incapacitating the officer or agent to act in that case." Thomp. Corp. § 1690. The by-laws and records of the company were inadmissible to limit the ostensible authority of Jones, either to conclusively establish his official character as vice president and that he was not treasurer, if the evidence establishes ostensible authority in him to act as treasurer, or to negative his ostensible authority to execute as its treasurer the promissory notes of this company. Of course the by-laws were properly receivable as evidence of the defendant's claim of limited actual authority in Jones as a part of its defense.

The actual authority under the by-laws not precluding the plaintiff from relying upon the ostensible authority of Jones, further consideration necessitates the examination for such basis for claimed ostensible authority in Jones to bind defendant as his principal. Wells in November, 1907, found Jones the actual agent and vice president of defendant, surrounded with all the indicia of full authority to represent it; he was in sole charge of its principal place of business, was its executive agent, with considerable actual authority; he was cashier and in full charge of a national bank, whose officers were also the defendant company's offices,—facts in themselves vouching for the financial responsibility and business repute of this official of defendant. True, defendant was not responsible for his cashiership, but it was responsible for the identity of offices and apparent business connection, and for this cashier's ability to represent it as its vice president and ostensible treasurer, if he did so. Defendant must be charged with those reasonable inferences that Wells, the cashier of the foreign plaintiff bank, would naturally draw from appearances he there found, and from what he, as a reasonable business man, would reasonably conclude from finding these two corporations nesting in the same offices, and both apparently in the charge of the same executive officer, with each corporation lending influence and drawing business for the other. Land companies in connection with and operated by banks are almost the rule, instead of the exception. If the removal of Jones as treasurer in January, 1907, be considered, the fact must not be overlooked that he was vir-

tually left in charge of whatever business was done by the company. Neither its president nor treasurer after 1906 actively participated in its affairs, but left matters to Jones. The suspicion of Jones that developed among the stockholders in 1906 had evidently been allayed. Defendant's unauthorized notes to the bank were ratified because the company had received the proceeds. The many disbursements of company money by himself as ostensible treasurer were treated as regular, and scores of these checks are in evidence disbursing several thousand dollars for the company, continually from practically the time he actually ceased to be treasurer in fact down to the receivership. All these facts are sufficient to present the question of fact of his removal as treasurer being more apparent than actual. While he did not hold that official position, he often exercised the powers of treasurer, and with the acquiescence of the company. In this respect we speak of Wilder as the company, as it appears that he was given general actual authority to direct its affairs and supervise the operations of Jones, he having been the recognized authority for such purposes even during the last year Jones was actual treasurer. And it appears that Wilder thus acting not only acquiesced in an appearance of actual authority in Jones, but also by letter advised Jones as to how to hold himself out as possessing authority Jones did not in fact have in connection with real estate instruments. In January, 1907, after the removal of Jones as treasurer, Wilder writes him: "I inclose you herewith a deed from the Northwestern Land Company in blank to the Passmore land, which I have executed in behalf of the corporation as its treasurer, thereby complying with the by-laws. If you desire to demonstrate your connection with the corporation, all you have to do is to sign 'A. H. Jones, Vice President,' and put an acknowledgment on the back, and those people up there won't know but that is the only thing that makes the deed good; all that they can possibly know about it is that there has been a shifting of the officers." Every word of this is significant, and strongly indicative of an intent of the official contended by defendant to be in control that the actual authority of Jones should not be known, unless Jones desired it to appear, it being left with him as to how far he should deceive "those people up there" as to what his actual authority was. "Those people up there" were the inhabitants of Rugby and vicinity, the patrons of this land company and of the associate bank. If this

was the attitude of the controlling officer of this corporation in the early part of 1907, as appears over his own signature to be the fact, the conclusion of fact might naturally follow that the ostensible authority of Jones was not in reality more limited in the years 1907 and 1908 than his actual general authority as treasurer prior thereto had been, inasmuch as the inspection visits of Wilder became less frequent and almost ceased, as appears from Wilder's own testimony. After this, in November, 1907, Wells happens along, finds Jones in such apparent authority, and in dealing with the bank of which Jones was cashier was offered notes for discount, among them this one of the defendant company. Wells was a banker, and the proof is that he used at least ordinary care, making considerable inquiry concerning this company, in the course of which he inquired at its only and principal office,—the proper place to get first-hand reliable information (Tunison v. Detroit & L. S. Copper Co. 73 Mich. 452, 41 N. W. 502; Bank of Batavia v. New York, L. E. & W. R. Co. 106 N. Y. 195, 60 Am. Rep. 440, 12 N. E. 433; Donohue v. Watson, 72 Misc. 56, 128 N. Y. Supp. 1089),—and of the company's representative in charge to give such, and, as the proof discloses, of the agent who would have given it in writing, had the inquiry been by letter; and that representative thus inquired of was a director and the vice president, and, with the president, treasurer, and other officials absent, the one to whom inquirers for the manager were always referred. He was authorized to answer this inquiry of Wells as to who were the officials of the company as a duty within the actual scope of his employment and authority, and as the official in charge of its principal place of business. His response to such business inquiries was the voice of the company speaking through its *authorized* agent, and for whose such acts it was responsible. "Corporations are liable for the acts of their servants while engaged in the business of their employment, in the same manner and to the same extent that individuals are liable under like circumstances." Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604–646, 19 L. ed. 1008–1018; notes in 33 Am. St. Rep. 720, 2 Am. St. Rep. 312, and 82 Am. Dec. 520. To this inquirer in the course of a pending business transaction, Jones made answer that he was the treasurer of the defendant company, and was such when the note he exhibited was given, and that he signed it as its treasurer. He told who the president

of the company was and for what it was capitalized, and the amount thereof paid in and of what its assets consisted. These statements were made under actual (not apparent or ostensible) authority in Jones to make them in the defendant's behalf, and Wells had the right to rely on their truth as a statement of facts. That these statements were made in fraud of defendant concerning a transaction in fact unauthorized does not change the fact that they were within the general scope of the duty and employment of Jones, and his wrongful or untruthful representations as to facts bind where his truthful statement of facts would do likewise. Jarvis v. Manhattan Beach Co. 51 Am. St. Rep. 727, and note (148 N. Y. 652, 31 L.R.A. 776, 43 N. E. 68) ; Gunster v. Scranton Illuminating Heat & P. Co. 59 Am. St. Rep. 650, and note (181 Pa. 327, 37 Atl. 550). It will be noticed that the statement made by Jones was not that he was an agent of the company or authorized by it to issue this paper. Short v. Northern P. Elevator Co. 1 N. D. 159 at 163, 45 N. W. 706. Instead, it is a declaration of independent facts, "not including the terms of his authority, but upon which his right to use his authority depends," and which this agent, his vice presidency, directorship, and charge of defendant's offices having been shown, had authority to make under the express provisions of § 5772, Rev. Codes 1905. Such is the law independent of statute. Mechem, Agency, §§ 714, 715; Clark & S. Agency, §§ 466, 467; North River Bank v. Aymar, 3 Hill, 262, at page 266. Having actual authority to make a truthful response to the inquirer, his misrepresentation that he was treasurer, though false, was an act committed by the agent in and as a part of the transaction of authorized business, for which, under the provisions of § 5788, Rev. Codes 1905, his principal, the corporation, is responsible, and whose act is the corporation's act to that extent. Had Wilder, the treasurer, or Wheeler, the president, made the same representation, it would have been no more the word of the company than the statement made by Jones that he was its treasurer then and when the note was signed. The company itself then had informed Wells before he dealt for its paper that Jones was its treasurer, and he had the right to rely on the truth of its representation concerning that fact. Farmers' & M. Bank v. Butchers' & D. Bank, 16 N. Y. 125, 69 Am. Dec. 678, quoted and approved in Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 649, 19 L. ed. 1008, page 1019; Fifth Ave. Bank

v. Forty-second Street & G. Street Ferry R. Co. 33 Am. St. Rep. 712, and note (137 N. Y. 231, 19 L.R.A. 331, 33 N. E. 378); Griswold v. Gebbie, 12 Am. St. Rep. 878, and note (126 Pa. 353, 17 Atl. 673), and if Wells's testimony be true, defendant is estopped to deny the truth of such representations so made within the scope of Jones' actual authority, including his representation that he was treasurer then and when the note was signed by him as such. See above authorities and also Ring v. Long Island Real Estate Exch. & Invest. Co. 93 App. Div. 442, 87 N. Y. Supp. 682; Jarvis v. Manhattan Beach Co. 148 N. Y. 652, 31 L.R.A. 776, 51 Am. St. Rep. 727, 43 N. E. 68; Knox v. Eden Musee American Co. 148 N. Y. 441, 31 L.R.A. 779, 42 N. E. 988; Hannon v. Siegel-Cooper Co. 167 N. Y. 244, 52 L.R.A. 429, 60 N. E. 597.

But, it may be asked, if Jones' statement of facts thus made binds the corporation principal, when do the statements of an employee or official not bind his principal? "The test as to liability of the principal for the acts of his agent is as to whether the acts were committed in the course of his employment and within the scope of his agency." Jennie Clarkson Home v. Missouri, K. & T. R. Co. 182 N. Y. 47, 70 L.R.A. 787–792, 74 N. E. 571. "What an agent does within the scope of his authority binds his principal; and this applies not only to his acts, but to all the representations made by him in that business; " not merely narration of past transactions or occurrences, note in 2 L.R.A. 808 at 810, citing: Cotton States L. Ins. Co. v. Edwards, 74 Ga. 220; Byne v. Hatcher, 75 Ga. 289; Lilley v. Fletcher, 81 Ala. 234, 1 So. 273; Hakes v. Myrick, 69 Iowa, 189, 28 N. W. 575; Higgins v. Armstrong, 9 Colo. 38, 10 Pac. 232; Hennessy Bros. & E. Co. v. Memphis Nat. Bank, 64 C. C. A. 125, 129 Fed. 557–560; Myers v. Southwestern Nat. Bank, 193 Pa. 1, 74 Am. St. Rep. 672, 44 Atl. 280.

It may be here remarked that in purchasing this note the plaintiff was not dealing with the company, though receiving from it information relied upon in dealing, but instead dealt with the bank, ostensibly holding the commercial paper, and as such plaintiff is protected in its title to the purported obligation as a holder in due course. American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; McPherrin v. Tittle, 44 L.R.A.(N.S.) 395, and extensive note (36 Okla. 510, 129 Pac. 721).

Nearly a year after the first transaction, Wells reappears at Rugby, is at defendant's place of business a dozen times, finds conditions as formerly, with Jones in full charge and apparently in sole authority, and, as Wells supposed, the treasurer; and, if Jones had been such official, he would have had both actual authority under the by-laws and ostensible authority under the proof to pay its obligations. Wells presents the note for payment, and the interest is paid to the amount of nearly $300, and Wells in further satisfaction accepts the renewal note sued on, to which the land company's signature is affixed by Jones as treasurer, and upon which note the indorsement of the First National Bank is also placed by its cashier. It is not necessary to pass upon whether this payment is a ratification of the purported original obligation. Farmers' Loan & T. Co. v. Toledo, A. A. & N. M. R. Co. 67 Fed. 49. It is a familiar rule that to ratify the power must exist to create the debt ratified. But, it certainly is evidence of ostensible authority in Jones to execute this particular paper. Though the treasurer by virtue of his office was without actual authority to issue corporate promissory notes, yet he had the actual power to pay the debts of the corporation, and a finding that Jones was at this time the ostensible treasurer, or that defendant is estopped to deny that he was such, is the equivalent of a finding that the payment of interest thus made was the act of the defendant corporation. It is therefore immaterial on the question of authority of the agent that the money used in making such payment was not that of the defendant, nor charged against defendant's deposit, as it would be liable to the party whose funds were so wrongfully used by its official to pay its purported obligation when the scope of the employment authorized payment of its debts, as the making of an erroneous payment was but an error in the performance of the agent's duty. Fifth Ave. Bank v. Forty-second Street & G. Street Ferry R. Co. 19 L.R.A. 231 and note (137 N. Y. 231, 33 Am. St. Rep. 712, 33 N. E. 378); Manhattan L. Ins. Co. v. Forty-second Street & G. Street Ferry R. Co. 139 N. Y. 146, 34 N. E. 976, as construed in Jennie Clarkson Home v. Missouri, K. & T. R. Co. 182 N. Y. 47, 70 L.R.A. 787, 74 N. E. 571. The underlying controlling principles involved are identical with those applicable, had Jones in October, 1908, paid plaintiff in full both principal and interest, instead of but the interest on the original note, and were the parties reversed, and this was

a suit by defendant to recover of plaintiff the amount so paid, or instead, for this interest payment of $300.   But by such a suit, it may be urged, defendant would necessarily admit that its money made such payment of interest or principal or both to Wells for plaintiff, which fact it denies and has sought to disprove.   But whether its money was used is not the test of its liability.   Its agent made the payment under actual authority under the by-laws, if Jones was then its ostensible treasurer.   His embezzlement of the bank's money to pay the defendant's debt was the defendant's act,—minus criminality, so far as third persons without notice were concerned.   Otherwise, an act done in excess of actual authority by a corporate agent in performance of his duties, but within the scope of his employment in matters with third persons, exonerates his corporate principal.   Such is not the law, and the trend of authority is to hold the principal as responsible for the excess over strict actual authority of the agent, rather than penalize the innocent third party reposing confidence in the chosen representative of the principal intentionally clothed by it with an actual, though secretly limited, authority.   All things being equal, the principal as the party at fault must suffer the results as those of his own act.   North River Bank v. Aymar, 3 Hill, 262–268; McCord v. Western U. Teleg. Co. 1 L.R.A. 143 and note (39 Minn. 181, 12 Am. St. Rep. 636, 39 N. W. 315); Mechanics' Bank v. Bank of Columbia, 5 Wheat. 326, 5 L. ed. 100; Rathburn v. Snow, 10 L.R.A. 355 and note (123 N. Y. 343, 25 N. E. 379); Wheeler v. McGuire, 2 L.R.A. 808 and note (86 Ala. 398, 5 So. 190).

The defendant as principal is responsible "only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused by the agent." 2 Enc. L. & P. 960, citing among other authorities Wheeler v. McGuire, 86 Ala. 398, 2 L.R.A. 808, 5 So. 190; St. Louis, I. M. & S. R. Co. v. Bennett, 53 Ark. 209, 22 Am. St. Rep. 187, 13 S. W. 742; Godshaw v. J. N. Struck & Bro. 109 Ky. 285, 51 L.R.A. 668, 58 S. W. 781; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570.   The appearances of authority from which ostensible authority must be judged, and for which the defendant is responsible as having caused, include among others the official relation of Jones to the company, he standing in the relation thereto both ostensibly and under estoppel arising from his represen-

tations as its treasurer, and as such under its by-laws possessed of gen-
eral executive authority in its behalf, as its general manager exercised
for years, besides being the actual custodian of its moneys and its dis-
bursing officer to pay debts and to determine as well what purported
obligations were its debts, a power necessarily included in and to be
inferred from the general authority in the agent, both under the by-
laws and under the evidence.

But respondent, citing Corey v. Hunter, 10 N. D. 5, 84 N. W. 570,
invokes another rule of agency, that the scope of the ostensible author-
ity in the agent is both circumscribed and measured by the nature of
the acts authorized actually or ostensibly to be done by the agent, and
contends that as the evidence shows but three instances of unauthorized
issuance of corporate negotiable notes by Jones, and but the issuance of
checks and other payment of money disbursements prior to the issuance
of this note, that no implied authority or ostensible agency is shown in
Jones to issue this promissory note.   It is true that "the nature and
extent of an implied authority are deemed to be limited to acts of a like
nature with those from which it is implied, and an implied agency is
never construed to extend beyond the obvious purposes for which it is
*apparently* created."   2 Enc. L. & P. 952.   But "obviously the ques-
tion whether any particular power is to be implied in any particular
agency is one depending in large measure on the facts and circumstan-
ces of the individual case."   2 Enc. L. & P. 953.   The question is large-
ly one of fact as to what the scope of the apparent authority in the
agent was.   Jones had been general agent as treasurer for several years,
and had issued three notes of the company as treasurer, whether such
official in fact or not apparently made no difference with him or with
the company.   He assumed to act three times in direct violation of the
company's by-laws, and there is evidence from which it might be found
that he was negligently permitted to remain in a position of apparent
authority to issue more of its notes, and dispose of them through the
bank as once before and here done.   The only difference between the
previous issue of notes by Jones and this instance is that here he has
misappropriated the proceeds.   The issuance of a series of its checks
during the years in question when he was permitted to remain the
virtual custodian of its funds, inasmuch as its deposits were under his
control in the same vault as was its records, its intrusting of its busi-

ness to him with slight supervision in fact, the commingling of its business and offices with the bank, and permitting Jones to preside over both with seeming authority and apparent financial responsibility and trustworthiness in any dealing with others and the community in general,—*all these taken together* might be taken as sufficient to apparently clothe him with an ostensible authority to issue negotiable promissory notes of his corporate principal, of which he was the *apparent* general manager for years. "The question in every case is whether the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question. Agents of private corporations are within the rule." 2 Enc. L. & P. 959. Johnston v. Milwaukee & W. Invest. Co. 46 Neb. 480, 64 N. W. 1100; Holt v. Schneider, 57 Neb. 523, 77 N. W. 1086. Coupled with the actual authority and appearances thereof arising therefrom, under which plaintiff purchased the first note, are the circumstances surrounding the execution and delivery of the note sued upon, including actual part payment of the first note by the exercise of an actual authority to pay debts, though by an unknown misuse of its funds it is true. The situation is not one of a stranger parting with his money by making a corporation a loan, it acting by its vice president in charge without actual or ostensible authority to act, and it receiving no consideration for its purported note. Instead, it is rather a situation well fitted to deceive the careful and prudent banker, which to all appearances and presumptions Wells was. The question is one of fact, and the evidence is prima facie sufficient as to ostensible authority in Jones to issue this promissory note to at least carry the question to the jury. Galbraith v. Weber, 28 L.R.A.(N.S.) 341 and note (58 Wash. 132, 107 Pac. 1050); Gratton & K. Mfg. Co. v. Redelsheimer, 28 Wash. 370, 68 Pac. 879; Holt v. Schneider, supra.

As to the objection made by the defendant to the numerous checks in evidence, offered for the purpose of showing that Jones had ostensible authority to act as treasurer, notwithstanding he was not such officer, which proof defendant contends was inadmissible except on the theory of estoppel, and to work which it is contended knowledge in Wells of the issue of the checks prior to the purchase of the notes should be

shown; a discussion of this involves the fundamental theory of ostensible authority. This very question is exhaustively treated in Blake v. Domestic Mfg. Co. 64 N. J. Eq. 480, at page 491 et seq., 38 Atl. 241, at page 256 et seq. "The precise question now involved . . . relates to the effect against the company of an agent's holding himself out to the public as authorized to indorse for discount and for the company's credit the business paper of the company without the directors' actual knowledge, but when they ought to have known of the agent's discounting for their credit; and the point to be resolved is whether the exercise of the authority under such circumstances creates the power as to the public, or whether the power is only created as against the company by reason also of the actual knowledge of the directors; and of the actual reliance upon the previous holding out to the public by the person dealing with the agent. The solution of the question depends . . . upon the application of principles relating to the law of agency, which are now too firmly settled to be called in question. In the first place a distinction between special and general agents is firmly settled in the law, which has also recognized general agencies either to transact a business or to perform a particular act or class of acts for the principal. And in reference to the creation of these general agencies either for a particular class of acts or the transaction of a business, the principle established is that such general agencies are in fact created against the principal by reason of his conduct in permitting the agent to hold himself out to the public as having the authority. . . . In Smith v. M'Guire, 3 Hurlst. & N. 554 (1858) the question of the effect toward the public of permitting another to act as a general agent was directly involved, and the particular question involved was whether the agent, who in the transaction of the business of the principal had constantly chartered vessels, but always or usually under special instructions, had a right to charter a vessel without such instructions so as to impose a liability upon the principal for not taking a cargo. Chief Baron Pollock says (at p. 560): 'I think that questions of this kind, whether arising on a charter party, a bill of exchange, or any other commercial instrument, or on a verbal contract, should be decided on this principle: Has the party who is charged with liability under the instrument or contract authorized and permitted the person, who has professed to act as his agent, to act in such a manner and to such an

extent that from what has occurred publicly the public in general would have a right to reasonably conclude, and persons dealing with him would naturally draw the inference, that he was the general agent? If so, in my judgment, the principal is bound, although as between him and the agent he takes care on every occasion to give special instructions.' In this case the holding out to the public by permitting the continued and general acts itself as to the public created the general agency to bind the principal by the act in question, although the actual authority as created between the principal and agent would not have permitted the act. The same principle that a general agency to do a particular act (e. g., to indorse paper and make loans) may be created by a holding out to the world, is also recognized in our own decisions. In Fifth Ward Sav. Bank v. First Nat. Bank, 47 N. J. L..357, 1 Atl. 478 (1885) the treasurer of the plaintiff savings bank obtained a loan of the defendant in the name of the plaintiff, and ostensibly for its use, pledging securities of the savings bank for its repayment. The treasurer fraudulently misappropriated the funds to his own use, and the savings bank brought an action of trover for the value of the securities. On verdict for the plaintiff and application for a new trial, Chief Justice Beasley said (at p. 358): The treasurer not having express power to make the loans or pledge the bonds, 'the only open point of inquiry on this question was whether or not the plaintiff had put its treasurer in such an attitude before the public or before the defendant as to have warranted a reasonable inference that he was its general agent, and had the right to execute the transaction in question.' . . . The opinion of the court said (at p. 527) that: 'When in the usual course of a business of a corporation an officer has been permitted to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business, and that in such cases the authority of the officer does not depend so much upon his title or on the theoretical nature of his office, as *on the duties he is in the habit of performing.'* The careful and precise statement in the above case by the learned chief justice of the question to be left to the jury in such cases distinguishes, it will be noticed, between the holding out to the world and the holding out to the defendant; and this distinction as it seems to me, touches directly one of the questions now involved, viz., whether the general agency in such cases arises

from estoppel. If there was a holding out to the defendant, but not a holding out to others or to the public as well, then the agency in such case might well be said to depend upon the estoppel of the principal to deny the agency, which he had held out to the creditor, and which the creditor had relied on. But it is clear . . . that in commercial transactions, which must be carried on largely by means of general agencies to do particular acts, there is an agency which is created by the general and public exercise of an authority with the permission of the principal; and where this general agency in fact exists as arising from this source, it is not necessary for the creditor to show further that it was previously known to him, and that he acted in reliance on it. Where the agency is a general agency provided by the continued exercise of the authority toward the public by the permission of the principal, and there is an estoppel to the public, the law presumes that the public knew of the holding out by the principal and acted on it. The principle of technical estoppel as between parties is not at all involved in such cases, and . . . could not be, for the reason that an estoppel of the principal toward the third person dealing with the agent must depend upon the representation by the principal made to the creditor. A representation to others could not, generally speaking, give rise to a technical estoppel at all, and the holding out to others or to the public, if it is to have any legal basis at all, must be by creating of itself, and wherever it is proved to exist a general authority as to the public for the particular act. For this reason . . . the distinction, as stated by the chief justice, must be taken as the true one, viz., whether the holding out as general agent is to the public or to the particular dealer only. If the latter only, estoppel is the basis, but not in the former cases." Citing Fifth Nat. Bank v. Navassa Phosphate Co. 119 N. Y. 256, 23 N. E. 737; Fifth Ward Sav. Bank v. First Nat. Bank, 48 N. J. L. 513, 7 Atl. 318. Evidence of disbursements by Jones as its acting, though not actual treasurer, was proof on the question of his ostensible authority. See also Johnson v. Milwaukee Invest. Co. 46 Neb. 480, 64 N. W. 1100; Holt v. Schneider, 57 Neb. 523, 77 N. W. 1086; General Cartage & Storage Co. v. Cox, 74 Ohio St. 284, 113 Am. St. Rep. 959, 78 N. E. 371.

Inasmuch as all ostensible authority of the active officials of banks, whether cashier or president, is, under the banking acts, national and

state, generally greater than that of executive officials of the same class in the ordinary corporation, what is said in First Nat. Bank v. Michigan City Bank, 8 N. D. 608, 80 N. W. 766, upon the ostensible powers of bank cashiers and in conflict with this opinion on the subject of ostensible powers of officials of this trading corporation, is disapproved. That decision was based upon, and but followed, Western Nat. Bank v. Armstrong, 152 U. S. 346, 38 L. ed. 470, 14 Sup. Ct. Rep. 572, twice since explained, and in part virtually overruled in Auten v. United States Nat. Bank, 174 U. S. 125, 141, 43 L. ed. 920, 926, 19 Sup. Ct. Rep. 628, 635, and in Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 627, 44 L. ed. 611, 614, 20 Sup. Ct. Rep. 498. The Federal Supreme Court in the later two cases reverses its position on the controlling question, and holds that the power of borrowing money is not one out of the usual course of banking business, directly contrary to its holding in Western Nat. Bank v. Armstrong, that "such transactions would be so much *out of the course of ordinary and legitimate banking* as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money." After analysis of the business of banking in Auten v. United States Nat. Bank, 174 U. S., at page 143, with reference particularly to Western Nat. Bank v. Armstrong, this language is used: "A power so useful *cannot be said to be illegitimate and declared* as a matter of law *to be out of the usual course of business,* and to charge everybody connected with it with knowledge that it may be in excess of authority. It would seem, if doubtful at all, more like *a question of fact to be resolved in the particular case by the usage of the parties or the usage of communities.*" Quoted and reaffirmed in Aldrich v. Chemical Nat. Bank, 176 U. S. at page 627. If borrowing money is within the usual course of banking business, a bank cashier, ostensibly clothed with the usual authority as such to act in behalf of his principal as to all transactions within the ordinary scope of that banking business, would bind his bank in borrowing money ostensibly for it, of one dealing with it through him, in reliance upon his ostensible authority as its cashier, and without notice of any actual limitation thereof. We do not say that evidence of usage of the parties or community as might be shown in the particular case might not change the presumption of ostensible authority otherwise applying, or that other circumstances, such as the amount of the

loan taken in connection with the capitalization and assets of the bank and banking usage of the locality, if known to the third party, might not have an important bearing on whether the loan might be considered as one made in the usual course of the particular banking business. But further discussion of this question is needless. Strictly speaking, it may be said that the question is not in issue in this case further than as incidentally involved as above explained. The case referred to has practically been twice modified. First Nat. Bank v. State Bank, 15 N. D. 594, 109 N. W. 61, in effect held that authority might be conferred upon a cashier to borrow on behalf of the bank, without resolution of its board of directors, and by its acquiescence in his general management of the institution, constituting him "virtually the sole manager of the bank, and as such clothed with ostensible authority to bind it to pay loans made by its cashier in its behalf." No mention was made of First Nat. Bank v. Michigan City Bank. But in the later case of First Nat. Bank v. Bakken, 17 N. D. 224, 116 N. W. 92, attention is called to the fact that Western Nat. Bank v. Armstrong, upon which the holding in First Nat. Bank v. Michigan City Bank was based, was later overruled in Aldrich v. Chemical Nat. Bank. In Smith v. Courant Co. 23 N. D. 297, 136 N. W. 781, attention is called particularly to the fact mentioned in that opinion that it was governed by the actual, rather than ostensible, powers of the corporate agent; it involving dealings between the corporation and its manager, or the wife of the manager, for whom the corporate agent was also an agent. It is not precedent on the facts wherein dealings were had with a third party ignorant of the actual authority of the agent, and who relies for recovery upon his ostensible authority.

Exception is taken by the plaintiff to the proof offered that the defendant received no value or consideration for the note, as incompetent, immaterial, and not binding upon the plaintiff under its theory of right of recovery under the ostensible, rather than actual, authority of Jones, and to the proof offered and received, over objection, that neither of these notes was entered on the books of the bank. It is undisputed that plaintiff paid full value for this note to the First National Bank, which bank, through Jones as its cashier, under liabilities prescribed by the national banking act (Yates v. Jones Nat. Bank, 206 U. S. 158–179, 51 L. ed. 1002–1014, 27 Sup. Ct. Rep. 638; Farmers' & M. Nat.

Bank v. Dearing, 91 U. S. 29–35, 23 L. ed. 196–199) received the same. The bank could not be heard to question that transaction as against plaintiff's suit, it having received plaintiff's money (Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604–646, 19 L. ed. 1008–1018), and the fact that Jones may have acted in bad faith toward the bank, or embezzled the bank assets coming from its sale of these notes to Wells or plaintiff, is immaterial and irrelevant, except to corroborate the proof offered, that no credit on the bank books was given defendant for said notes, for which purpose it was admissible. As a part of defendant's main case, it could offer evidence to establish that it received none of the money paid by Wells to the national bank, nor any value from said national bank for said notes, to negative any estoppel that otherwise might be invoked against defendant from a receipt of any benefits of the transaction, preventing it from defending on the ground of want of authority in its agent to execute and deliver its commercial paper, or to negative any presumption of ratification by receipt and retention of money from the national bank for delivery of its notes. For such reasons, testimony was admissible that the national bank books disclosed no payment to it as a consideration for said notes. But for reasons hereinbefore discussed at length this does not apply to the $300 interest payment made on renewal of the original note. Much evidence of conclusions tending to refute the authority of Jones was also erroneously received. This is illustrated by the following questions asked witness Trepanier, a director, testifying for the defendant, in direct examination: "Q. Now during these years (1907 and 1908) after Wilder was elected treasurer, did Jones, to your knowledge, have any authority to transact or carry on any business of the Northwest Land Company?" Witness answered in the negative. Again: "Q. Had Jones since January, 1907, had any authority from the directors to borrow any money for the corporation?" This was likewise answered in the negative. If the question has reference to the actual authority of Jones, the by-laws and corporate records are the best evidence, especially so here, where it was early disclosed by the testimony of F. W. Wilder that correct records of the directors' meetings and of the business transacted at them were kept, and such records were in court. If reference is made to ostensible authority, want of knowledge of the witness of any assumption of authority by Jones, or facts showing his nonacquiescence in any assumed

authority, or his ignorance of the facts upon which the same is predicated, may be shown, but, if ostensible authority is meant, the question as framed is open to the objection made that the same calls for a conclusion of the witness instead of a statement of fact. The impropriety of the questions is the more evident under the admissions of the witness in cross-examination that he had never checked over the books or made any inquiries or investigation to ascertain what Jones was doing, and would not say whether or not he knew Jones was vice president, and did not in fact know who was vice president of the company, and in fact had not been in Rugby since the election of Wilder as treasurer in January, 1907, or for nearly a year prior to the time that Wells dealt for these notes. Almost identical questions were asked another director, George H. Wilder, who testified he became a director in the latter part of 1906, but never attended directors' meetings, except one at Rugby and some at Grand Forks. This witness was asked: "Q. I would ask you whether, to your knowledge, Jones at any time after the meeting of January 8, 1907, had any authority to transact any of the business of the Northwestern Land Company,"—to which, over objection, answer was made in the negative. He was then asked: "Q. Did he, after that meeting in January, 1907, have any authority, to your knowledge, to borrow any money or issue any evidence of indebtedness of the Northwestern Land Company?"—to which, over objection, he answered in the negative. What is above said as to the same questions offered over the same objections here applies.

The court having erroneously received this testimony over objection where it should have been excluded, it must have considered it upon the all-important and crucial question of fact of Jones' authority as agent. The presumption is that it was considered to plaintiff's prejudice, and constitutes prejudicial error.

It was proper, of course, to show that whatever was done by Jones was without the knowledge, sanction, or direction of the individual directors or of the board of directors, hence the following question propounded to these witnesses was proper: "Q. I will ask you whether, prior to the commencement of this action, you had any knowledge that Jones had since January, 1907, attempted to borrow any money or issue any evidence of indebtedness of the Northwestern Land Company."

Turning to the findings, it appears that the court has found explicitly that "Jones was not the treasurer of said Northwestern Land Company, neither did he at said time have any actual or ostensible authority to execute or deliver said note in the name of or for or in behalf of said Northwestern Land Company; that the note was not made, executed, or delivered by said defendant, nor by any person authorized to make, execute, and deliver the same, nor was the same made, executed, or delivered with its knowledge, consent, or acquiescence." From the fact that the court permitted the introduction of the evidence of all transactions offered by the plaintiff tending to prove the ostensible authority of Jones, and that without proof of prior knowledge thereof in Wells or his reliance thereon, these findings, in the absence of reversible error in the admission of evidence, would be conclusive, and have the same force as the findings of a jury. But the memorandum decision accompanying the findings plainly shows error in the reasoning of the court in arriving at its conclusions of fact, and also discloses that the evidence must have been weighed under a misapprehension of the law applicable to the proof. The opinion of the trial court is very brief. It reads: "I have carefully considered the written arguments by both sides and the authorities cited. It is plain that Jones did not have actual authority to execute the note in suit. It does not seem to me that the defendant was guilty of want of ordinary care in permitting Jones to exercise the limited power, that the defendant permitted him to exercise after January, 1907, in connection with the affairs of the land company. Hence, I am unable to find that Jones had ostensible authority to execute the note. Further, I do not think under the evidence that defendant is estopped to deny Jones' authority to execute the note. Defendant's attorneys may prepare proper findings."

It is readily apparent from the views of the trial court thus expressed that his findings, against ostensible authority in Jones to do as he did do, are based upon the mistaken premise of whether or not defendant was *negligent* "in permitting Jones to exercise the limited power that the defendant permitted him to exercise after January, 1907;" and on the question of estoppel of the defendant to deny authority to execute the note. Instead of questions of negligence, the issue was, not the manner of the creation of any ostensible authority (as whether by negligence without intent to confer it, or instead of intentional conferring of it,

but rather whether ostensible authority, however conferred, had been granted Jones to exercise authority in behalf of the corporation in these instances.   It was not the method of creating the ostensible authority, but instead the fact of whether authority was, by either method prescribed by the statute, § 5770 (*i. e.,* intentionally or negligently), conferred.   To say, as did the learned trial judge, that the defendant was not guilty of "want of ordinary care in permitting Jones to exercise the limited power that the defendant permitted him to exercise after January, 1907, in connection with the affairs of the land company, hence I am unable to find that Jones had ostensible authority to execute the note,"—is not a finding on the fact of his ostensible authority, especially under the evidence in this case, which tends as strongly to establish that whatever ostensible power was conferred upon Jones was not negligently or unintentionally conferred, unless it be said that business men and directors of corporations do not intend, and cannot be held to intend, the natural consequences of their deliberate acts.   Reference need be made only to the letter above quoted of Wilder to Jones, as evidence of that.   The trial court has not found, under its reasoning, upon whether ostensible authority intentionally conferred existed in Jones to execute and negotiate this commercial paper.   It has not decided whether Jones was defendant's ostensible agent in such transactions, nor really passed upon his ostensible authority at all.   Had the trial been to a jury and the court's instructions authorized it to reason, as has the court in its memorandum decision, in arriving at its verdict, its findings or verdict would be vitiated by its false basis, because of faulty instructions.   Though the memorandum opinion is no part of the decision itself, yet when it reflects fundamental error in arriving at the conclusions of fact found, the decision thereon should be vacated.

To epitomize and briefly recite and apply the foregoing.   Whoever deals with a corporation by its purported agent does so at his peril as to the existence of the relationship of principal and agent between the corporation and the purported agent.   But where the agency exists, and the agent's authority is drawn in question, the burden is on the party asserting the authority in the agent to bind the corporation, as to the particular act to prove such authority.   Such proof may be made by evidence of actual authority as derived from the by-laws or resolution of directors, or from the general manager, to whom has been delegated

general corporate authority, or it may be established by evidence of ostensible authority usually (as here sought to be proved) shown by dealings, acts, or course of corporate conduct, from which it may reasonably be said to be implied an acquiescence, consent, or authority to do the particular act has been conferred upon the agent, and will be recognized by the corporation as vested in the agent. In determining the sufficiency of such proof to establish ostensible authority, knowledge of the by-laws is not imputed to the third person dealing in reliance upon such ostensible authority, unless by custom concerning the particular dealing the by-laws are usually considered, in which event to ignore them may amount to negligence, and may defeat recovery on any ostensible authority of the agent. Ostensible authority may be shown by prior acts of the corporation with third persons, independent of whether known to or relied upon by the person dealing with the corporation in reliance upon the ostensible authority of the agent, as such proof is based upon a holding out by the corporation of the agent to the public as having authority so to act for it in the particular capacity, and is in no sense based upon technical estoppel between the corporation and such third person.

The declaration of the agent as to facts, as here, that he was treasurer, made in the course of and within the scope of his duties, to an inquirer and concerning particularly a pending business transaction involving the known contemplated purchase of the corporation's purported negotiable paper, the agent being shown to have been the vice president, director, and resident manager of the corporation, binds the corporation, and as to it in such transaction the agent is in contemplation of law its treasurer.

The proof submitted by plaintiff was sufficient to present for determination the issue of whether this note was executed under ostensible authority therefor, and as such was the act and note of the corporation.

The payment of interest of $300 on the first note given is to be deemed a payment made by defendant's ostensible treasurer.

The renewal note was likewise the act of its ostensible treasurer, and the defendant's liability thereon depends upon the ostensible authority of its treasurer to issue its promissory note as its authorized act under the circumstances under which it was issued, it being a renewal of a

purported note, and delivered and accepted contemporaneously with payment of the interest made upon the original purported obligation.

The by-laws are admissible as a part of the defense in support of its claim of no actual or implied authority, to prove which the actual authority conferred upon its agent is important in weighing evidence of both actual and ostensible authority. Proof of nonreceipt of any consideration for the notes is admissible to negative any estoppel otherwise arising from a reception of benefits of the transaction.

Ostensible authority is an ultimate conclusion to be determined by the proof of facts, and it is error to receive in evidence the testimony of corporate officials, amounting in effect to their conclusions on the existence of such ostensible authority in the agent to so act. For such repeated error on trial, this case is reversed.

A new trial is ordered.

Goss, J. Rehearing has been had, and after full reargument and examination of briefs and authorities, we adhere to what is stated in the foregoing opinion.