THE UNION CENTRAL LIFE INSURANCE COMPANY, a Corporation, Appellant, v. FIRST NATIONAL BANK OF COURTENAY, NORTH DAKOTA, a Corporation, and Farmers Elevator Company, of Courtenay, North Dakota, a Corporation, Respondents.

(216 N. W. 201.)

**Banks and banking — chattel mortgages — waiver of priority.**

On examination of the whole record in this case, the trial court found there was no waiver by the bank of its right of priority under a chattel mortgage, and no proof of any authority on the part of the cashier of the defendant bank to waive such priority. Such finding is justified by the record in the case and is affirmed.

Opinion filed November 4, 1927. Rehearing denied November 26, 1927.

Banks and Banking, 7 C. J. § 151 p. 544 n. 80. Chattel Mortgages, 11 C. J. § 412 p. 662 n. 17.

Appeal from the District Court of Stutsman County, *Jansonius, J.* Affirmed.

*Aylmer & Aylmer, P. W. Lanier,* and *Lawrence, Murphy & Nilles,* for appellant.

"Corporations are held to whatever is within the apparent scope of the powers with which they have either intentionally. or negligently clothed their agents, unless the parties with whom said agents contract have notice that their powers are limited." Grant County State Bank v. Northwest Land Co. 28 N. D. 479, 150 N. W. 736.

"Knowledge of the by-laws and contents of the corporation books are not imputed to the plaintiff in the absence of negligence." Ibid.

On the question of the cashier's authority to bind ·the bank see the following: McIntosh v. Dakota Trust Co. 52 N. D. 752, 204 N. W. 818; Hilton v. Advance Thresher Co. (N. D.) 66 N. W. 816; Ashelman Bros. v. Siebold, 52 N. D. 465, 203 N. W. 176; First Nat. Bank v. Michigan City Bank, 8 N. D. 608, 80 N. W. 766.

*Knauf & Knauf,* for respondents.

Persons dealing with a bank are presumed to know the extent of the general powers of the officers. First Nat. Bank v. National Exch. Bank, 92 U. S. 127.

"The borrowing of money by a bank, though not illegal, is so much out of the course of ordinary and legitimate banking business as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money, and where no such special authority appears, and no ratification of the unauthorized act is shown, the bank is not liable." Bank v. Armstrong, 13 C. C. A. 47, 65 Fed. 573.

"The cashier has no power to release a security upon a note given to the bank." Magee, Banks & Bkg. 2d ed. 202a.

The president of a bank cannot consent to an arrangement by which the security due the bank will be impaired, nor make promises which will relieve the maker of a note payable to the bank from responsibility. 10 Cyc. §§ 907, 911.

No officer of the corporation has implied authority to waive the right of the company to indemnity which has already accrued. Home Ins. Co. v. Chattahoochee Lumber Co. 126 Ga. 334, 55 S. E. 11.

The president of a bank has no authority, virtute officio, to give up to

a debtor securities held by the bank against him. Olney v. Chadsey, 7 R. I. 224.

"Cashier of a bank, by virtue of his office, is not authorized to release a surety upon a note or bill belonging to the bank without payment." Bank v. Rudolph, 5 Neb. 527.

A cashier cannot of himself create an agency for purposes outside his general authority. United States v. Bank of Columbus, 21 How. 362, 16 L. ed. 130.

BURR, J. This is an action in conversion. On March 21, 1924, one B. and his wife gave to the plaintiff a chattel mortgage on all crops which were to be grown, planted, cultivated, etc., during 1924 on certain real estate described therein, which mortgage was filed March 21, 1924. On December 1, 1923, the said B. and wife had given to defendant bank a chattel mortgage on all of the same crops, which mortgage was filed immediately. Plaintiff says there was an agreement between it and the defendant bank by the terms of which the bank waived its priority under its chattel mortgage in favor of the plaintiff; that because of said waiver of priority the plaintiff had extended the time of payment of interest and taxes under a real estate mortgage given by B. and wife on the same land; and that the chattel mortgage given to the plaintiff was taken to secure the payment of these delinquent items. The defendant bank denies any such agreement and waiver, and stands upon the priority of its mortgage. The evidence shows wheat and flax were grown on said land during the year 1924, and sold to the defendant elevator company. The main issue in this case is whether there was a waiver given by the defendant to the plaintiff. A jury was empanelled and at the close of the case both sides moved for a directed verdict. The court considered these motions and ordered judgment in favor of the defendant. On April 7, 1927, plaintiff made a motion for judgment notwithstanding the verdict or for a new trial, which was denied. On June 7, 1927, plaintiff made a second motion to the same effect. From the order denying this second motion the plaintiff appeals. Defendant moves to dismiss this appeal, claiming any appeal contemplated should have been taken from the first order, and plaintiff had no right to make the second motion. Defendant also argues this appeal. The errors complained of in this appeal include the finding by the court that there

was no waiver; the admission of the by-laws of the defendant bank in evidence; admitting the testimony of the former cashier of the bank as to his lack of authority; and in refusing to admit any evidence showing a waiver agreement made between another and former cashier and plaintiff the year before.

The evidence of a waiver upon which the plaintiff relies is based largely upon a letter received by it from one George E. Berg, the then cashier of the defendant bank, which letter was in response to an inquiry of one J. C. Eaton an agent of the plaintiff. Mr. Eaton wrote to the cashier in February 1924, Exhibit F, as follows: "Please let us know what you have decided to do regarding waiving of priority in chattel mortgage which you have already taken from B. and B. We are ready to go ahead with our deal with these people, but we are waiting to hear from you first." In answer to this inquiry Mr. Berg wrote March 1, 1924, "Replying to your favor of the 27th inst. will say that we have decided to relinquish our crop mortgage for 1924 in your favor in the B. and B. deals." (Exhibit G.) The plaintiff company says that thereafter and in March 1924, it took a crop mortgage and extended the time of payment of the delinquent interest and taxes until October 1, 1924.

The defendant says that the evidence shows conclusively there was no waiver, and that the cashier had no authority to waive any priority. There is no contention that any formal waiver was sent with Exhibit G.

It appears that there was a reorganization of the defendant bank prior to May 1, 1924, and on that date plaintiff wrote Exhibit 1 a letter addressed to the bank, in which it said, after referring to the reported reorganization, "We understand there is a re-organization of your bank . . . What we want to know, of course, is whether or not your bank as now organized in going to go ahead with the K. deal or let it go by the board. The same information will be appreciated in reference to the B. and B. matters. We do not want to appear to be taking a position which would be embarrassing to you at this time and if you will write us as to the situation between your bank and these deals we would be very glad to do what we can to carry these matters along. However, if it is not the intention of your bank as now organized to take charge of these deals, particularly the K. matter, it seems to us that we better foreclose at once." On May 20, 1924, the plaintiff wrote a letter

(Exhibit 2) in which it says, among other things: "We have for attention again the B. and B. matter and at this time we would like to have you advise us whether or not you are willing to carry out your agreement to execute a formal waiver on the priority of the mortgage held by the First National Bank of your city against the 1924 crop on these lands. It was fully understood between this office and yourself that you would execute these waivers, and we have a letter from you agreeing to do so, and while we believe that this letter binds you to the performance of that agreement we still feel that we should have the waiver signed by you as cashier and we would like to know just what you are going to do about this." The cashier answered with Exhibit 4 to the effect: "In reply to your favor of the 20th inst. regarding the B. and B. loans will say that I was instructed by both of these parties not to release on the crop mortgage given by them to us; owing to the fact, etc." On June 6, 1924 plaintiff wrote Exhibit 3 to the bank, saying, among other things:

"We are enclosing herewith waivers which we trust you will now find it possible to sign . . . unless these waivers are forthcoming, we do not see how the company will be justified in granting any extensions. We hope that you will have this back to our office at an early date."

In the letter was Exhibit 5,—a form of waiver to be signed by the bank. Not getting the waiver the plaintiff again wrote to the bank a letter, Exhibit 6, dated June 13, 1924, saying:

"Please advise us what you have decided to do in the B. and B. deals. We sent you some waivers last week. We have been hoping that you would send them back. Both of these men tell us that it was fully understood when you made the mortgage that you would waive your claim against the home crops as you had in previous years." This appears to be the correspondence between the parties in regard to the alleged waiver. It is very clear that with a possible exception of Exhibit G, there is no proof whatever of any waiver on the part of the bank.

As to Exhibit G, the defendant claims there is no proof of any authority on the part of the cashier to agree to waive and no such authority was shown in the evidence. The plaintiff made no attempt to show authority on the part of the cashier to give away any rights which the bank had in this crop, or to subject them to rights which the plaintiff may have had, or claimed. The plaintiff objected to the introduction of

the by-laws. We need not pass upon the foundation laid for the introduction. Without them no authority is shown and they themselves show that the cashier had no authority whatever to enter into any such agreement. The by-laws are the only evidence introduced to show the authority of the cashier and they negative his authority in this respect. Cashier Berg was a witness and expressly stated he had no authority to waive the security, and had never been authorized by the board of directors to release any mortgage or to waive any mortgage security without the debt being paid. Plaintiff objected to the introduction of this testimony. There was no error in receiving it. Plaintiff argues for ostensible authority given the cashier, quoting § 6338 of the Code and cites Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, 150 N. W. 736; and McIntosh v. Dakota Trust Co. 52 N. D. 752, 40 A.L.R. 1021, 204 N. W. 818, in support of his contention. There can be no claim of actual authority. Ostensible authority in this case is based on the cashier's general charge of affairs of the bank and a supposed previous act of another cashier. Cashier Berg who wrote the letter, Exhibit G, was cashier for about one year at the time this controversy arose. It cannot be said that this first instance of an attempted waiver is such continued action as under the McIntosh Case, supra, indicated conferring of authority or ratification by the board of directors. General charge of affairs of a bank cannot, in itself, be construed into giving the cashier an extra agency not included in carrying on the ordinary affairs of the bank. His actions which indicate authority beyond carrying on the mere general affairs must be open and notorious so that it is presumed the corporation knew what he was doing, and coincided with it. In this case there is no contention that the directors intentionally allowed a third person to believe the cashier could give away the assets of the bank, and the isolated act of a former cashier granting a waiver, unknown to the directors, cannot be distorted into want of ordinary care. In the Grant County State Bank Case, supra, the cashier for years was doing the very thing which was the subject of the action and it was presumed the directors knew he was running the bank as if it were his own private business. Ostensible authority is a question of fact. It must be based on acts or negligence of the corporation. It is what the principal makes or permits to appear. Long continued practice which the board is presumed to know, as in the

cases cited, or acts which the board ratifies or fails to repudiate may be construed as ostensible authority. All this is lacking here.

The defendant says the evidence does not amount to a waiver even though it could be said the cashier had ostensible authority to enter into such an agreement; the most that can be said is, it is an offer to waive, and plaintiff so construed the correspondence; the subsequent letters showed plaintiff knew the board would have to confirm what the cashier was attempting to do and the exhibits, especially Exhibit 1 and Exhibit 3, show the whole transaction was merely tentative; that the extensions of time offered to be given to B and his wife were dependent upon getting the formal waiver as the plaintiff said in Exhibit 3: "Unless these waivers are forthcoming, we do not see how the company will be justified in granting any extensions," and in Exhibit 1, that if the waiver was not forthcoming it would "better foreclose at once." This view was upheld by the trial court.

Plaintiff complains because the court sustained objections to testimony which would tend to show that on a former occasion another cashier had waived such priority. There was no error in refusing to admit in evidence testimony showing this previous transaction. Even had the cashier so waived, there was nothing to show that the board of directors knew anything about it, had ever authorized it, or had ratified it. There was no offer of proof along that line.

Plaintiff proceeds on the theory that the cashier had such power claimed and questions the order for judgment on the ground that:

"There is no competent evidence showing lack of authority on the part of the cashier of defendant bank to waive priority under chattel mortgage."

The burden of proof is on the plaintiff to prove the authority. The trial court found against plaintiff, holding there was no waiver and there was no proof the cashier had such power; but on the contrary the evidence showed he did not have actual authority or ostensible authority so to do. We agree with the findings of the trial court. We need not pass on the issues raised by the motion to dismiss the appeal, and the judgment is affirmed, with costs.

BIRDZELL, Ch. J., and BURKE, NUESSLE, and CHRISTIANSON, JJ., concur.